### ABRAM WHITE *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk. Nov. 20, 1883. — Jan. 5, 1884. C. ALLEN & HOLMES, JJ., absent.

In an action against a railroad corporation for personal injuries sustained by the plaintiff, while a passenger on a car of the defendant road, the accident being caused by another car coming violently against the car in which the plaintiff was riding, while making a "flying switch," there was evidence that on other occasions the cars had come together with as much violence. Experts testified for the defendant, that connecting cars in this way was a safe and prudent mode of management. One of them testified, on cross-examination, that there was a great dispute among railroad experts as to the safety of "flying switches." The plaintiff put in no expert testimony on this point. *Held,* that he was properly allowed to go to the jury on the question whether such a mode of connecting the cars, under all the circumstances of the case, was proper.

If a passenger, in a railroad car standing on a side track, is injured by the car being struck by the car of another corporation, through the negligence of a brakeman in the employ of such corporation, in connecting the two cars for the purpose of carrying out a contract between the corporations for their joint benefit, an action may be maintained by the injured person against the corporation owning the car in which he was a passenger.

TORT for personal injuries received by the plaintiff while a passenger on the defendant's railroad, with a count in contract for a breach of the defendant's contract to carry the plaintiff safely. Trial in this court, before *Field*, J., who reported the case for the consideration of the full court, in substance as follows :

It was proved or admitted that, at the time of the alleged injury, the plaintiff was a passenger in one of the defendant's cars ; that he had purchased a ticket which entitled him to be carried therein from West Townsend to Boston ; that the defendant owned a branch road leading from West Townsend, and joining with its main road at a place called Ayer Junction, which branch is called the Peterboro' and Shirley branch ; that at Ayer Junction the defendant's road is crossed at right angles by another road, called the Worcester and Nashua Railroad ; that this road connects with the defendant's road by certain side-tracks, laid from the former to the latter road on the side opposite to that on which the Peterboro' and Shirley branch joins the same. By a contract between the defendant and the Worcester and Nashua Railroad Company, it was agreed, in order to run a line from Worcester to Boston, that each corporation should provide two passenger cars for this line, that each should haul at each trip one or more of said passenger cars over its line, and that the fares received on this line should be equally divided between the two corporations, the cars hauled by each to be taken up by the train of the other at Ayer Junction. By long practice between the roads, the connecting of the cars was performed by coupling the same on one of the side-tracks leading from the Worcester and Nashua Railroad to the defendant's road. The defendant's car coming over the Peterboro' and Shirley Railroad towards Boston was backed up on one of said side-tracks, and, being left by the locomotive, remained there until the Worcester and Nashua train arrived at the junction. The Worcester and Nashua train disconnected from its train such car or cars as were to be drawn to Boston at a point about half a mile from the connecting side-tracks, and from which there was so descending a grade that the car would move, if started, by its own momentum ; said car, with a brakeman of the Worcester and Nashua Railroad Company, proceeded on by its own impetus, and was

afterwards directed by a switch on to the side-track, where it ran down towards, and was to be connected with, the defendant's car or cars, placed there for the purpose, by patent couplers. This process is called making a flying switch. On the day in question, the defendant's car, in which the plaintiff was riding, was backed up as usual on said side-track, and, while waiting there, the car from the Worcester and Nashua Railroad which was intended to be joined to the defendant's car came, under the direction of the brakeman of the Worcester and Nashua Railroad, and struck the Peterboro' and Shirley car, knocking said car forward four feet, (breaking the glass chimneys of some of the lamps,) from which collision, as the plaintiff alleged, he received the injuries sued for. It appeared by the evidence of the defendant's witnesses that, at some other times, the car sent over the flying switch had struck the stationary car with as much violence as upon the occasion of the accident, but no harm had ever resulted therefrom. No evidence was offered as to the condition and equipment of the car coming from the Worcester and Nashua Railroad, or as to which road, the Worcester and Nashua or the defendant road, the particular car belonged, except that there was a brakeman upon it belonging to the Worcester and Nashua Railroad. But it did appear that the two cars were united by a self-coupling apparatus upon their respective platforms, instead of requiring a man to couple them by going between them to use a bolt.

The defendant called as witnesses William B. Stearns, its president, and John Adams, its superintendent, persons of long experience in the management of railroads, each of whom testified that it was a safe and prudent mode of management. The president admitted that there was a great dispute among railroad experts as to the safety of flying switches, some preferring switching engines and some flying switches.

The defendant contended that, upon the above facts, it was not liable for the injury, but that it was caused, if at all, by the negligence of the Worcester and Nashua Railroad; and that there was no other evidence tending to show negligence on the part of the defendant. The plaintiff contended, among other things, that it was carelessness on the part of the defendant to place its cars on said side-track, and allow them to be connected, as they

were, with the car from the Worcester and Nashua Railroad by means of a flying switch; but introduced no evidence on this point.

The jury returned a verdict for the plaintiff in the sum of $7500; and found, in answer to questions in writing put by the court, that both corporations were negligent.

*C. A. Welch*, for the defendant.

*R. D. Smith & M. R. Thomas*, (*N. Abbott* with them,) for the plaintiff.

COLBURN, J. As a carrier of passengers, the defendant was bound, in the management of its cars and trains, and in making connections of cars, to exercise the highest degree of care which it could reasonably, to prevent such injuries to its passengers as human care and forethought could avert. *McElroy* v. *Nashua & Lowell Railroad*, 4 Cush. 400. *Warren* v. *Fitchburg Railroad*, 8 Allen, 227. *Eaton* v. *Boston & Lowell Railroad*, 11 Allen, 500. The defendant was responsible for the method it adopted, or approved, for connecting with its trains the cars of the Worcester and Nashua Railroad. It was for the jury to determine whether the method adopted was safe and prudent. They had all the facts before them, and, among others, the descending grade, the distance that the moving car had to run by the impetus given it by the train from which it was detached, and the momentum resulting from the descending grade of the tracks; and the fact that, on previous occasions, violent collisions had occurred. They could form an opinion as to how far the speed of the car was liable to be varied at different times under the conditions stated, and by the force and direction of the wind; and how far it was safe and prudent to rely upon the judgment and skill of a brakeman upon the moving car, under all these circumstances, with the effect of the weather upon the brakes, wheels, and track, to bring the cars together with sufficient force to make the automatic connection, but not so as to cause damage.

Railroads have been so long in use, are so common and commonly used by the public, and the different methods adopted of managing trains and connecting cars and trains are so far matters of common observation, knowledge, and experience, that, when all the facts were before them, the jury were competent

to judge, without the aid of expert testimony, whether the method adopted in this case to accomplish the purpose intended was safe and prudent compared with other methods which might have been adopted to accomplish the same purpose. It was for the jury to determine how far the opinions of experts, which were in the case without objection, should influence their judgments, and how far the experts were liable to be biased by the fact that they had adopted or sanctioned the method in question, especially when they admit that a great difference of opinion exists among railroad experts as to the safety of the method adopted in this case compared with other methods.

Whether the use of what is termed a "flying switch" is safe and prudent, in any given case, is not a question of law, but of fact, to be determined according to the conditions and circumstances existing in that case. We cannot say that, under the evidence and circumstances of this case, the jury were not warranted in finding the defendant to have been negligent. It is not questioned that the brakeman on the moving car was negligent, and that the jury were warranted in finding that the Worcester and Nashua Railroad Company, in whose employ he was, its servants and agents, were guilty of negligence. The brakeman, though in the employ of the Worcester and Nashua Railroad Company, was engaged in a service which the two corporations had agreed should be performed for their joint benefit. He was acting for the defendant, with its express or implied approval, as well as for the other corporation, and the defendant must be held responsible to the plaintiff, whom it had contracted to carry safely, for an injury resulting from the negligence of this brakeman, to which it had voluntarily exposed him. *Eaton* v. *Boston & Lowell Railroad, ubi supra. Great Western Railway* v. *Blake,* 7 H. & N. 987. *Thomas* v. *Rhymney Railway,* L. R. 6 Q. B. 266.            *Judgment on the verdict.*