FURNISH *et al.* v. THE MISSOURI PACIFIC RAILWAY
COMPANY, *Appellant.*

1. **Railroad**: PASSENGERS: CARE REQUIRED. A railroad company is
bound to furnish for its passengers a reasonably safe and sufficient
track and equipments so far as can be provided by the utmost
human skill, diligence and foresight, which is such skill, diligence
and foresight as is exercised by a very cautious person under like
circumstances.

2. ——— : ——— : SLIGHT NEGLIGENCE. It is liable to a passenger
for slight negligence.

3. ——— : ——— : CARE REQUIRED. The care required of a railroad
towards its passengers may also be defined as the highest practi-
cable care, caution and diligence which capable and faithful rail-
road men would exercise in similar circumstances.

4. ——— : ——— : DEFECT IN TRACK: INSPECTION. The duty of a
railroad to exercise proper care to discover by inspection a defect
in its track is an essential part of its obligation to its passengers.

5. ——— : INJURY TO PASSENGER: PRIMA FACIE CASE. Proof by a
passenger of the derailment of the train and his injury makes out
a *prima facie* case of the company's negligence.

6. **Personal Injuries**: EXCESSIVE VERDICT: REMITTITUR. A verdict
for $15,000 for personal injuries *held* excessive in this case and
the judgment ordered to be reversed and cause remanded, unless
respondents should enter a *remittitur* of $5,000 within thirty days.
[BARCLAY, J., *dissenting.*]

*Appeal from Bates Circuit Court.*—HON. D. A.
DEARMOND, Judge.

REVERSED AND REMANDED.

This was an action brought by Martha A. Furnish,
being joined therein by her husband, to recover of
defendant damages for injuries sustained by her while
a passenger on one of defendant's cars. It appeared in
evidence that on the sixth of February, 1886, she took
passage on an accommodation train consisting of a loco-
motive and tender, a baggage car and two passenger

coaches at Independence, Missouri, intending to go to Kansas City. When the train arrived within a mile and a half of Kansas City the locomotive and all the cars left the track on an embankment, and after leaving the rails the train tipped over and rested on its side.

The plaintiff introduced evidence tending to prove that at the point where the locomotive left the track a number of ties were broken off and splintered, some of them were decayed and rotten, and that the tire of one of the drive wheels, which had been placed thereon shortly before the accident, was three-eighths of an inch thicker than the one on the companion drive wheel, and that the difference in thickness had been called to the attention of defendant's assistant master mechanic, while the locomotive was in the repair shop shortly before the accident. The effect of this difference was to make one drive wheel larger than the other.

There was evidence that the south rail, at the point where the locomotive left the track, was bent inwardly toward the north rail.

Defendant introduced evidence tending to show that the ties, at the point where the train left the track, were sound ties, capable of holding the spikes; that the track at that point had been inspected daily for a long time; that it had been inspected two hours before the accident occurred, and there was nothing to indicate any defect in the track or roadbed. Defendant also gave evidence tending to prove that the engine was inspected by the engineer immediately before it left Independence on that trip, and it was found in perfect condition as far as he could discover.

The master mechanic, assistant master mechanic and engineer of defendant, all testified that the difference in the thickness of the tire would have no effect upon the safety of the locomotive, nor any tendency to throw it from the track. The assistant master mechanic denied that his attention had been called to the difference in the thickness of the tire by the witness who testified he

had done so, and further testified that the latter had nothing to do with the engine when it was in the shop for repairs.

Plaintiff's evidence as to her injuries was that, after the car in which she was riding was derailed, she was found lying on the top of the car with her feet through a window and a cushion across her face. She was taken out of the wreck, and placed upon some cushions and afterwards removed to a hotel in Kansas City where she remained for twenty-five days. She was examined by a physician the afternoon of the accident. He testified that he found a great deal of tenderness in the small of the back, increased pain upon pressure radiating for several inches around the point of injury, with increased sensibility of the limbs, and that she was suffering a great deal from the fall. At that time there was no external evidence of an injury, but in a day or two afterwards there was some discoloration along the back and side. After her return home he saw her several times and found her but little improved.

The evidence of her family physician was to the effect that he had known and prescribed for her since 1879; considered her in delicate health for two or three years from that time, and up to within two years she had had attacks of neuralgia, often complaining of her back, but for eighteen months prior to her injury he had not prescribed for her; that her injuries had rendered her an invalid, unable to walk or attend to any of her household duties, and that he believed she would be unable to walk for a long period.

On cross-examination, he testified that, in his opinion, her spinal cord was not injured by the accident; that she had no indications of paralysis and that she would probably in time recover so as to get around, but would, in all probability, always have a weak back.

Another physician, called as an expert, testified that he had seen her twice, the first time in April, 1886, and the second time a week before the trial; that in

some respects she had improved, in others not; that he believed her injuries were permanent, but that the probabilities were that she would get better; that she had got better.

Testimony was given by non-professional witnesses, that she had not been able to walk prior to the trial.

At the close of the evidence the court, of its own motion, gave the following instructions to the jury, without objection or exception by either party, viz.:

"A.   If the jury believe from the evidence that, at the time said train was overturned, the employes of defendant were exercising, and had exercised, the highest practicable care, caution and diligence, which capable and faithful railroad men would exercise under similar circumstances, and that the train ran off, or was thrown from the track, and was overturned by cause or a cause, unknown to the defendant, its agents and servants, and which could not have been discovered by them, and the causes or cause of the accident removed or counteracted by the exercise of the aforesaid care, caution and diligence, then the plaintiffs cannot recover in this action, and the verdict should be for the defendant.

"B.   The jury are instructed that, although they may believe from the evidence that some of defendant's ties on its roadbed were decayed or rotten, as described by some of plaintiff's witnesses, yet they should not find a verdict for plaintiffs on this ground, if they believe from the evidence that such condition of said ties did not cause the train to be thrown from the track, and plaintiff, Martha A. Furnish, to be injured, as complained of in the petition.

"C.   The court instructs the jury that although they may believe from the evidence that one of the drive wheels of the locomotive, which was hauling the train in question, had been re-tired, and that the new tire had not been turned down, yet they cannot find for plaintiffs on this ground, unless it appears from the evidence, that it was necessary to have the same turned

down to render it fit and proper to be used to avoid accident, nor can they find for plaintiff on this ground, if it appears from the evidence that the injury complained of did not result from defendant's failure to have said tire turned down."

Furthermore the following instructions were given at the instance of plaintiff, viz. :

"D. The court instructs the jury that if they believe from the evidence that the defendant corporation was engaged in the business of transporting passengers for hire upon a railroad operated by it, then the law denominates the defendant a common carrier; and it was bound to provide a reasonably safe track and roadbed, and reasonably safe and staunch road, worthy cars and engines, and careful employes to manage the same, so far as human skill, diligence and foresight could provide; and is responsible for all injuries resulting from slight negligence on the part of itself, its agents or servants; if therefore the jury believe from the evidence, that on or about the sixth day of February, 1886, the plaintiff, Martha A. Furnish, took passage on the cars of the defendant; and that said car, while said Martha A. Furnish was a passenger thereon, ran off the track of defendant's railroad, and fell down the embankment thereof, and the plaintiff, Martha A. Furnish, without fault or negligence on her part, was thereby injured, then it rests on the defendant to prove to your satisfaction that said car, the engine drawing the same, the machinery by which it was operated, and the roadbed, track and ties of the road, at the place of derailment, were reasonably safe and sound, so far as human skill, diligence and foresight could provide; and that said accident was caused by inevitable accident or defects in said car, engine, machinery, roadbed, track and ties, that could not have been seen, detected or known to the defendant, its agents or servants, by the exercise of the utmost human skill, diligence and foresight.

" E.   The court instructs the jury, that if they believe from the evidence that on or about the sixth day of February, 1886, the defendant was engaged in the business of transporting passengers in the state of Missouri, and that on said day the plaintiff, Martha A. Furnish, was received by it, to be carried as a passenger on one of its said cars, and that, while being so transported on said car, she was injured by reason of said car leaving the track and falling down an embankment of defendant's railroad, then the burden rests upon the defendant to prove to the satisfaction of the jury, that said derailment was caused by inevitable accident, and not from any defect or imperfection in said car or the engine by which it was drawn, or the machinery by which it was operated, or in the roadbed, track or ties of the defendant's road, which could have been prevented by the exercise of the utmost human skill, diligence and foresight, and to prove that the injury could not have been prevented by the exercise of the utmost human skill, diligence and foresight ; and, unless the jury so believe, they will find for the plaintiffs.

"By the utmost human skill, diligence and foresight is meant such skill, diligence and foresight as is exercised by a very cautious person under like circumstances.

"F.   If the jury should find for the plaintiffs, they will assess Martha A. Furnish's damages at such sum as they may believe from the evidence will compensate her, the said Martha A. Furnish, for her injuries, including all bodily pain and mental anguish they may believe from the evidence she has suffered and will necessarily and inevitably suffer, and any permanent injury or incapacity they may believe from the evidence she has sustained, and it will be proper for the jury to consider also the effect of the injury upon plaintiff Martha A. Furnish's health in the future, if they believe from the evidence her future health will be affected by the injury,

and all damages, present and future, which from the evidence they believe to be the necessary result of the injury complained of, not exceeding the sum of $25,000."

The instructions given in behalf of defendant were these, viz.:

"G. The court instructs the jury that the defendant as a common carrier of passengers over its railroad in its cars, did not undertake to insure or absolutely guarantee the safety of Martha A. Furnish, and the defendant was not bound to have its roadbed or tracks, ties, cars, engine and machinery absolutely safe; nor did the law require the defendant to adopt every precaution to prevent Martha A. Furnish from being injured, and the persons in charge of defendant's train and railroad were only required to use that degree of care which prudent railroad men would exercise under like circumstances with no knowledge that an accident was to happen.

"H. The court instructs the jury, that there is no evidence in this case tending to show that any part of the car in which plaintiff, Martha A. Furnish, was riding at the time of the injury was defectively or improperly constructed.

"I. The jury are instructed that, if they find for the plaintiff they can only find such damages as Martha A. Furnish has sustained as the natural and reasonable result of the injury she received at the time of the accident; and these must be only compensatory. In this case punitive or exemplary damages cannot be allowed by the jury."

"K. The jury are instructed, that if they find for plaintiff, they must not allow any present damages for her alleged permanent injury, or for apprehended future consequences of the injury received by the accident in question, unless they believe from a preponderance of evidence that there is such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury; it is not

enough that the injury received may develop into more serious consequences or conditions than those which were visible at the time of the injury, or at the present time, or even that they are likely to develop consequences which are contingent, speculative or merely possible, are not proper to be considered by the jury in ascertaining the damages.

"L.    The jury are instructed, that the merely possible or even probable continuance of plaintiff Martha A. Furnish's disability or injuries received at the time of the accident is not an element of damages in this case to justify them in assessing damages for future or permanent disability or injury ; it must appear by a preponderance of the evidence in the case that continuous or permanent disability is reasonably certain to result from such injuries ; consequences which are speculative or contingent cannot be taken into consideration by the jury in arriving at the verdict.    It is not enough that plaintiff Martha A. Furnish's injuries which she then received may develop into condition more serious than they are at present or may continue ; but the jury must be satisfied from a preponderance of the evidence that they will so result or continue.

The instructions offered by defendant, and refused by the court, were as follows, viz. :

"1.    The jury are instructed that, under the pleadings and evidence in this case, the plaintiffs cannot recover, and you will find for the defendant.

"2.    Although the jury may believe that the train in which Martha A. Furnish was riding was overturned by some defect in defendant's roadbed, track, ties, cars, engine or machinery, yet they will find for defendant, unless they further find from a preponderance of the evidence that the defendant's employes knew of such defect, or by the exercise of reasonable skill and diligence could have discovered such defect.

"3.    If the jury believe from the evidence that, at the time said train was overturned, the employes of the

defendant were exercising, and had exercised, the highest practical diligence, which capable and faithful railroad men would exercise under similar circumstances, and that the said train was thrown or run off the track, and was overturned by causes which were unknown to the defendent, and which could not have been known to the defendant by the exercise of reasonable care and caution, skill and diligence, then the plaintiff cannot recover in this action, and the finding must be for the defendant.

"4.    The jury are instructed that, although they may believe from the evidence that some of defendant's ties of its roadbed were decayed or rotten as described by some of plaintiffs' witnesses ; yet before they can find a verdict for plaintiffs on this ground, they must believe from a preponderance of the evidence that such condition caused the train to be thrown from the track by which plaintiff suffered the injury complained of.

"5.    The jury are instructed that, although they may believe that one of the drive wheels of the locomotive which was hauling the train in question had been re-tired, and that the new tire had not been turned down, before they can find a verdict for the plaintiff on this ground, they must believe from a preponderance of evidence that it was necessary to have the same turned down to render it fit and proper to be used so as to avoid accident, and they must further believe that the defendant's failure to have the same turned down did cause the injury complained of ; and in this connection the jury are further instructed, that, if they believe that Mr. New, master mechanic of defendant, was a skilful, experienced mechanic, familiar with the construction and repair of locomotive engines, defendant had a right to rely upon his judgment and his decisions thereunder as to the necessity of turning down the tire of said drive wheel, and the defendant is not liable for any error of judgment of said New in that regard."

Under the instructions and evidence, the jury found a verdict for plaintiffs for $15,000, and judgment was rendered thereon, from which the defendant appealed, in due course, after the proper motions and exceptions.

*Adams & Buckner* for appellant.

(1) It was error to give to the jury respondent's instruction, numbered 1. The jury were not told in said instruction what, under all the circumstances of the case, was the legal meaning of the words, "utmost human skill, diligence and foresight," and they were misleading and the instruction erroneous. *Dougherty v. Railroad*, 8 S. W. Rep. 900. (2) The legal meaning of the words should have been explained to the jury by the court. *Stewart v. City of Clinton*, 79 Mo. 683; *Wyatt v. Railroad*, 62 Mo. 408; *Nagel v. Railroad*, 75 Mo. 653; *State to use v. Estel*, 6 Mo. App. 6; *Digby v. Ins. Co.*, 3 Mo. App. 603; *State to use v. Laurie*, 1 Mo. App. 376. (3) And, although their meaning was attempted to be explained in the second instruction given for plaintiff, it was calculated to mislead and confuse the jury, and should not have been given. *Donahue v. Railroad*, 83 Mo. 560; *Chouteau v. Iron Works*, 82 Mo. 73; *Greer v. Parker*, 85 Mo. 107; *Jones v. Talbot*, 4 Mo. 279. (4) This instruction was not cured by the court; instructing the jury as to the care and caution which the defendant company should exercise under similar circumstances as explained in the instructions given for defendant. *Goetz v. Railroad*, 50 Mo. 472; *Welsh v. Railroad*, 20 Mo. App. 477; *State to use v. Laurie*, 1 Mo. App. 376; *Mfg. Co. v. Hudson*, 6 Mo. App. 145. (5) The instructions asked by defendant, numbered 3, 5 and 6, found on page 195 of the record and refused, should have been given. The duty the defendant owed the plaintiff as a passenger was therein presented, and the test by which such duty could be ascertained defined. Rorer on Railroads, sec. 11, p.

955, and cases there cited; *Meer v. Railroad*, 64 Penn. St. 225; *Taylor v. Railroad*, 48 N. H. 304; *Tuttle v. Talbot*, 23 Ill. 357; *Railroad v. Halloran*, 53 Texas, 46; *Sweetland v. Railroad*, 102 Mass. 276; *Tuttle v. Railroad*, 48 Iowa, 236; *Railroad v. Boyd*, 65 Ind. 526. (6) The damages assessed by the jury were exorbitant and grossly excessive, and are evidently the result of passion or prejudice. *Railroad v. Finlayson*, 16 Neb. 578–591; *Railroad v. Hazzard*, 26 Ill. 235–244; *Railroad v. Welsh*, 52 Ill. 188; *Railroad v. Fillmore*, 57 Ill. 267; *Railroad v. Jackson*, 55 Ill. 170; *Railroad v. Peavey*, 29 Kas. 170; *Railroad v. Hand*, 7 Kas. 380; *Railroad v. Milliken*, 8 Kas. 659; *Sawyer v. Railroad*, 37 Mo. 240–264; *Collins v. City*, 35 Iowa, 432; *Rose v. Railroad*, 39 Iowa, 252; *Spicer v. Railroad*, 22 Wis. 580; *Railroad v. Henry*, 62 Ill. 142; *Waldhier v. Railroad*, 87 Mo. 37.

*Gates & Wallace* for respondents.

(1) Plaintiffs' instruction, numbered 1, complained of by the appellant, correctly stated the law applicable to the case, and its language has often been adopted by this court. The meaning of "utmost human skill, diligence and foresight" was correctly defined and explained to the jury in plaintiffs' instruction, numbered 2. *Lemon v. Chanslor*, 68 Mo. 340; *Hipsley v. Railroad*, 88 Mo. 348; *Leslie v. Railroad*, 88 Mo. 50; *Gibson v. Railroad*, 76 Mo. 282; *Hulsenkamp v. Railroad*, 37 Mo. 537; *Waller v. Railroad*, 83 Mo. 608; *Kelley v. Railroad*, 70 Mo. 609; *Spohn v. Railroad*, 87 Mo. 74. The rule laid down in this instruction is also general and uniform throughout the United States. Thompson on Carriers of Passengers, p. 200; Rorer on Railroads, p. 949; Cooley on Torts, p. 642; 2 Kent, Com. 602; Story on Bailment, sec. 601; *Railroad v. Roy*, 102 U. S. 451; *Railroad v. Horst*, 93 U. S. 291; *Railroad v. Derby*, 14 How. 485; *The New World v. King*, 16 How. 469.

(2) The court did not err in refusing the instructions asked by the defendant, numbered 3, 5 and 6. These instructions as asked did not state the correct rule as to the liability of the defendant as a common carrier of passengers; they ignored the *prima facie* case made out by the derailment of the train, and placed the burden of proof on the wrong party. The court gave them in a modified form stating the proper rule of law applicable to the case; and all the instructions taken together submitted the case to the jury clearly and fully and in exact accordance with the law. *Lemon v. Chanslor,* 68 Mo. 340; *Hipsley v. Railroad,* 88 Mo. 348; *Sawyer v. Railroad,* 37 Mo. 259. (3) The damages found by the jury were not excessive. This was a question for the jury, and their verdict will not be disturbed unless it was clearly the result of passion or prejudice. *Harrold v. Railroad,* 24 Hun. 184; *Groves v. Rochester,* 39 Hun. 5; *Railroad v. Holland,* 18 Ill. 418; *Alberti v. Railroad,* 43 Hun. 421; *Railroad v. Thompson,* 64 Miss. 584; *Woodbury v. District of Columbia,* 5 Mackey, 127; *Railroad v. Dorsey,* 66 Tex. 148; *Schultz v. Railroad,* 46 N. Y. Sup. Ct. 211; *Shaw v. Railroad,* 3 Gray, 47; *Walker v. Railroad,* 63 Barb. 260; *Waldhier v. Railroad,* 87 Mo. 37; *Barksdull v. Railroad,* 23 La. Ann. 180; *Dougherty v. Railroad,* 8 S. W. Rep. 900; *Rockwell v. Railroad,* 64 Barb. 438; *Berg v. Railroad,* 50 Wis. 419; *Railroad v. Moore,* 31 Kan. 197; *Robinson v. Railroad,* 48 Cal. 409; *Porter v. Railroad,* 71 Mo. 66; *Belair v. Railroad,* 43 Iowa, 662; *Deppe v. Railroad,* 38 Iowa, 592; *Railroad v. Parks,* 88 Ill. 373; *Griffith v. Railroad,* S. E. Rep. 559.

BARCLAY, J.—It is conceded by defendant that the case made by plaintiff entitled her to its submission to the jury, and no question of her contributory negligence was raised at any time. The exceptions now urged are only those bearing on the correctness of the instructions and on the amount of plaintiff's damages.

I.  Defendant's chief objection is to the rulings of the trial court, marking the degree of care to be maintained by it as a carrier of passengers.

It should first be noted that the instruction, given (of its own motion) by the court, defined the care required of defendant toward passengers as the "highest practicable care, caution and diligence which capable and faithful railroad men would exercise under similar circumstances."

This instruction was given without objection from any quarter and, therefore, must be accepted as the law for the case in hand, without regard to its correctness or incorrectness in the abstract.  And, since it states the rule substantially as laid down in the other instructions, there is serious doubt whether defendant is in position to question the latter now.  But we do not deem it necessary to dispose of the question upon any such narrow ground of practice.  Being satisfied of the soundness of the rulings of the trial court on this subject, we think it opportune to consider them from a standpoint of wider range.

Throughout the instructions it is asserted that the duty, owing by a steam railway carrier to its passengers, is to furnish reasonably safe and sufficient roadbed, track, cars and engine "so far as human skill, diligence and foresight could provide;" and that defendant "is responsible for all injuries resulting from slight negligence" on its part.  In another part of them the import of the words, "utmost human skill, diligence and foresight," as used by the court, is explained to be "such skill, diligence and foresight as is exercised by a very cautious person under like circumstances."  This is substantially and almost literally the same language as is approved by text-writers of high authority in summarizing the law deducible from all the precedents. Story's Bailments, sec. 601; 2 Greenleaf's Ev., sec. 221; 2 Kent's Com. 601.

The court also told the jury that the defendant as a common carrier of passengers did not undertake to insure the safety of plaintiff.

Taking the declarations of law together, we think they stated the obligations of defendant to plaintiff as its passenger with great accuracy. To exercise the highest practical care which capable and faithful railroad men would take, in like circumstances, to provide a track, rolling-stock and service, reasonably fit and sufficient to perform the contract of transportation into which the carrier has entered, is the measure of defendant's legal duty in such cases.

That rule does not rest upon any artificial or technical division of negligence into grades or classes, but springs naturally from an application to such facts of the general principle that a man of ordinary prudence is required to exercise a care proportionate to the risks he assumes in the business he has in hand. Where he undertakes a risk involving safety of life and limb to those with whom he deals, he is charged with a care proportionate to the peril.

When a passenger commits his person to a carrier for hire for transportation by railroad over rivers, across mountains, through cities, in the night—it may be while asleep, at a speed expressive of the progress of the age in which we live, he may justly demand the exercise of such care on the part of the carrier, against disaster, as in the nature of things such undertaking would imply. That degree of care has generally been defined in language such as was used in the instruction before us. It has been repeatedly approved by many courts, and we consider the rule so well established in our jurisprudence as to require no further argument to support it. *Leslie v. Railroad*, 88 Mo. 50; *Penn. Co. v. Roy*, 102 U. S. 451; *White v. Railroad*, 136 Mass. 321; *Railroad v. Anderson*, 94 Pa. St. 351; *Caldwell v. Steamboat Co.*, 47 N. Y. 282. As stated above, we d₍ not consider it in

conflict with the ruling in *Dougherty v. Railroad*, 97 Mo. 647.

The instructions of the court go no further than to declare it in various forms of expression, the meaning of which, taken as a whole, is unmistakable.

Irrespective of any question of the burden of proof, there was, in the present action, abundant evidence to justify the inference that the injury to plaintiff resulted from a derailment of the cars occasioned by the giving way of rotten and unsafe ties in the roadbed at the place of the accident. That such a defect in the roadway could have been discovered by a proper discharge of defendant's duty of inspection in time to avert the calamity, the evidence strongly tended to show.

That duty was an essential part of defendant's obligation towards its passengers, and it was chargeable in its performance with any omission of the "highest practicable care of capable and faithful railroad men" (in the language of the court) in the circumstances. *Miller v. O. S. S. Co.*, 118 N. Y. 200.

II. Regarding the instruction (marked "D") placing the burden of proof upon defendant to show that the injury did not occur through any omission to discharge its legal duty in the premises, it should be remarked that the same instruction first required plaintiff to establish that the car in which she was a passenger "ran off the track of defendant's railroad and fell down the embankment thereof" and that she was thereby injured.

Thus framed the instruction correctly expressed the law on the subject. The mere injury of plaintiff while a passenger did not call for explanation or proof from defendant. It first devolved on plaintiff to show some fact with reference to it from which negligence on defendant's part as a carrier might be fairly inferred. Here it was shown that the car ran off the track and over the embankment. The condition of the roadway at that point warranted the inference that the injury was

occasioned thereby. In that state of the case, if the jury found that plaintiff had been injured by the derailment of the car and its fall down the embankment, it then devolved on defendant to explain how these things occurred without breach of its duty to plaintiff as a carrier.

This is what the court said in effect, and it committed no error in so doing. *Hipsley v. Railroad*, 27 Am. & Eng. R. R. Cas. 287, and 88 Mo. 348; *Breen v. Railroad*, 109 N. Y. 297; *Seybolt v. Railroad*, 95 N. Y. 562.

It may not be entirely in accord with technical nicety to instruct that the burden of proof shifts to defendant in the course of such a trial. It might be more accurate to say (in proper form for the purposes of a jury trial) that the facts of the derailment of the car and of plaintiff's injury thereby make out a *prima facie* case of defendant's negligence, which, unexplained, would justify a recovery; but, in the ordinary course of administering law, it has become usual to declare that, on a certain showing by plaintiff in such cases, the burden of proof then rests on defendant to prove that it has not been negligent. We are not prepared to condemn that form of expression at this day, in view of our statute to the effect that, in all proceedings, we should regard substance rather than form (R. S. 1879, sec. 3586), and should not reverse for any error not affecting the substantial rights of the adverse party. R. S. 1879, sec. 3569.

III. Defendant's next contention is that the court erred in refusing certain instructions requested by it. They are recited in the statement accompanying this opinion. We will consider them separately.

That, numbered 1, declared that the plaintiff could not recover on the evidence. It is not argued here. Obviously there is nothing in the exception to its refusal.

That, numbered 2, is defective in holding defendant to the "exercise of reasonable skill and diligence"

only.   In view of what we have already said above, it is unnecessary to comment further upon it.

That, numbered 3, is almost literally the same as that marked A, given by the court of its own motion, except that the words "aforesaid care" are substituted by the court for "reasonable care."   As the instruction A was not objected or excepted to, it is difficult to see how defendant can now avail itself of the refusal in question. But, irrespective of that, we think the change made by the court was proper to bring the instruction into harmony with itself.   Without that modification two different degrees of care would have been stated in the same declaration of law as measuring defendant's liability.   The court adopted the first one, as defined by defendant, and brought the rest of the instruction into consistency with it.   To this defendant took no exception and is now concluded by the action of the trial court in that regard.

No point has been made in this court in any way upon the refusal of instructions, numbered 4 and 5, as asked by defendant,   There is, hence, no need to consider them.   The court, in the instructions marked B and C ( unexcepted to ), gave to the jury as much of the requests, referred to, as the law warranted.

IV   No complaint is entered against the instructions fixing the measure of damges ; but it is earnestly insisted that the assessment by the jury of plaintiff's compensation of $15,000 is excessive.

This court has no hesitation in setting aside a verdict when clearly satisfied that the evidence does not support the assessment of damages, as in other instances of failure of proof.

But many cases arise in which, at this distance from the trial court room, we feel ourselves disposed to defer to the action of the circuit judge on this point, and to resolve any reasonable doubts on the subject in favor of the correctness of his ruling approving the finding.

The trial court should, on motion, fearlessly and willingly reduce any verdict to its proper amount when the weight of the evidence indicates it as excessive. That judge has the advantage of forming his opinions from the living realities before him, and the impressions so obtained are far more reliable than those given by any transcript of the record on appeal. We, therefore, give great weight to his rulings on matters depending on the credibility of witnesses, on the physical appearances of parties, and the like. It is, therefore, of the utmost importance in the administration of justice that he should act firmly and promptly on such subjects and apply a proper corrective to any unwarranted findings thereon by juries. The cases in which we can properly interfere are exceptional.

In the case before us there is evidence that the plaintiff is probably crippled for life, owing to the injury of her spinal cord; that she suffers pain intermittently; that she was not able to walk before or at the time of the trial; was fifty-three years of age and had left her house but once since the accident; that she was then carried out for fresh air, but was so pained that she did not go out again. She was examined at various times by several eminent physicians, among them by Dr. King, of Sedalia, one of the leading surgeons of the defendant; but defendant did not give the jury the benefit of Dr. King's observations of the case.

The plaintiff's injuries seem to me of such serious nature and extent as should preclude us from pronouncing excessive the damages awarded therefor in view of former rulings as to the proper occasions for such interference. *Whalen v. Railroad* (1875), 60 Mo. 323; *Porter v. Railroad* (1879), 71 Mo. 66; *Klutts v. Railroad* (1882), 75 Mo. 642. Approved precedents have sanctioned many larger findings in cases of injuries of somewhat similar nature. *Harrold v. Railroad*, 24 Hun. 184; *Railroad v. Holland*, 18 Bradw. 418, affirmed

122 Ill. 461; *Woodbury v. District of Columbia*, 5 Mackey, 127.

. But my learned · associates differ with me on this branch of the case and desire the announcement of their conclusion that the judgment be reversed and the cause remanded on the ground of excessive damages unless plaintiff will remit $5,000 thereof within thirty days. From that conclusion my dissent is entered.

All the judges concur on the points discussed in this opinion except as indicated in this (the fourth) paragraph.