EVERS, Respondent, v. THE WIGGINS FERRY COMPANY, Appellant.

St. Louis Court of Appeals, December 12, 1905.

1. CARRIER OF PASSENGERS: Personal Injuries: Prima Facie Case. In an action for damages on account of personal injuries received by the plaintiff while a passenger on the defendant's steamboat, the plaintiff's evidence tended to show that the hurricane deck of the steamboat was not constructed for the purpose of receiving passengers; that the plaintiff was told to go upon the hurricane deck, the boat being crowded, by the defendant's collector, and that no order or request was made upon plaintiff to go below, and that such a number of passengers crowded upon the hurricane deck as to break it

down so that the plaintiff fell with the rest and received the injuries complained of. *Held*; the breaking of the deck resulting in injury to the plaintiff, under the circumstances, was prima facie evidence of negligence on the part of the defendant and a demurrer to the evidence was properly overruled.

2. ———: ———: **Duty of Carrier.** A carrier of passengers is charged with the duty of providing such equipment for their carriage as it is possible to do by human care and foresight; but it is not an insurer of the safety of passengers. In an action for personal injuries received by a passenger on a steamboat, caused by the breaking of the hurricane deck, an instruction to the effect that it was the defendant's duty to build that part of its boat sufficiently strong to carry its passengers without breaking was erroneous because requiring the defendant to insure the safety of its passengers.

3. ———: ———: **Res Ipsa Loquitur.** Where the hurricane deck of a steamboat fell because of the weight of a number of passengers who were allowed to go upon it by the steamboat company, in an action for injuries received by one of the passengers, the proof of the falling of the deck was prima facie evidence that it was negligently constructed but not conclusive.

4. ———: ———: **Contributory Negligence: Instruction.** An instruction, in such case, that if plaintiff remained upon the deck after the captain gave orders to the passengers to go below in a sufficiently loud tone of voice to be heard by the plaintiff, the plaintiff could not recover, was erroneous because it did not require a finding that the plaintiff heard the order.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED.

*J. E. McKeighan, Horatio D. Wood* and *Wm. R. Gentry* for appellant.

The plaintiff is not entitled to recover. (a) The evidence showed only one cause which produced the accident, viz., the conduct of the passengers, including plaintiff. The plaintiff tells a story which is so grossly improbable as to show that it is unworthy of belief. He claims that he was told by the collector to go where he went. When the officers of the boat were giving orders

to everybody to stay away from the roof, shutting the doors and almost fighting to keep people down from there, it is incredible that they should invite plaintiff to go there. But even if it be conceded that they did allow him to go there, and if he is thereby relieved of contributory negligence, they did all in their power to keep the crowd away. That it is negligence on the part of a passenger to attempt to ride in a place not intended for the carriage of passengers and in violation of the rules or orders of the carrier is well established. Higgins v. Railroad, 36 Mo. 418; Chaney v. Railroad, 176 Mo. 598; Railroad v. Jones, 95 U. S. 439; Aufdenberg v. Railroad, 132 Mo. 565; Tully v. Railroad, 41 Mo. App. 432; Railroad v. Schumacher, 152 U. S. 77; Hunt v. Railroad, 14 Mo. App. 160-171; Seymour v. Railroad, 114 Mo. 266; Wills v. Railroad, 129 Mass. 351; M'Cauley v. Railroad, 93 Ala. 356; Macon v. Railroad, 38 Ga. 409; Brown v. Scorboro, 97 Ala. 316; Steamboat Co. v. Brockett, 121 U. S. 637; Railroad v. Ball, 53 N. J. L. 283; Down v. Railroad, 28 W. Va. 732; Railroad v. Kelsey, 180 Ill. 530; Summons v. Steamboat Co., 97 Mass. 361; Dodge v. Boston & C. Co., 148 Mass. 213. The court erred in giving improper instructions. (a) The court erred in giving instruction No. 1, at the request of the plaintiff. May v. Crawford, 150 Mo. 504; Link v. Westerman, 80 Mo. App. 592; Hohstadt v. Davis, 50 Mo. App. 240; Evans v. Railroad, 16 Mo. App. 522. (c) Instruction No. 3, given at the request of the plaintiff, is incomplete and erroneous. (d) Moreover, the instructions are in conflict with each other. It is a well-established rule of law, which is recognized in many decisions in this State that where the court gives to the jury instructions which are conflicting so that the tendency is to confuse the jury, the losing party is entitled to a new trial. Dlauhi v. Railroad, 105 Mo. 645; White v. Ins. Co., 93 App. 282; Imp. Co. v. Ritchie, 143 Mo. 587; Land & L. Co. v. Tie Co., 87 App. 167; Wallis v. Westport, 82 Mo. App. 522.

*Lee Meriwether* for respondent.

BLAND, P. J.—The plaintiff is a youth between thirteen and fourteen years of age and sues by his next friend. The defendant is a corporation engaged in running a line of ferry boats across the Mississippi river, between St. Louis, Missouri, and East St. Louis, Illinois, carrying both passengers and freight. On May 1, 1903, and for some days prior thereto, the United States gunboat, Nashville, was anchored in the river between St. Louis and East St. Louis. Defendant issued circulars inviting people to take passage on its ferry boats for the purpose of viewing the gunboat, Nashville. May 1, 1903, was on Sunday. A considerable number of people, including the plaintiff, paid their fares at the St. Louis wharf and took passage on the defendant's ferry boot, Church, and were carried to East St. Louis. The plaintiff and other passengers aboard did not go ashore on arrival of the Church at the East St. Louis wharf, but paid their fares for the return trip. When the Church left the East St. Louis wharf there were thirty or thirty-five passengers on the hurricane deck. This number was increased to from seventy-five to one hundred by the time the boat reached the middle of the river and as it passed the gunboat Nashville they rushed across the hurricane deck to the side next the gunboat to get a better view. Their concentrated weight caused a portion of the hurricane deck (a space about nine feet wide and thirty-five feet long) to break through, precipitating the plaintiff and other passengers to the deck below. As a result of the fall plaintiff received a compound fracture of one of his legs. He sued for this injury and recovered a judgment for $2,750, from which defendant appealed to this court.

The evidence shows that the ferryboat Church had three decks, designated a lower, boiler and hurricane decks, inclosed by railings. Benches were placed around the lower deck for the purpose of accommodat-

ing passengers with seats. The boiler deck was also provided with seats for the accommodation of passengers and had a cabin for their use. The upper deck or roof had no provision whatever for seating passengers and had only an ornamental railing, about six inches high, around it. It was supported by 2x2 oak stanchions and upon it was the pilot house. The stairway leading from the boiler deck to the hurricane deck was narrow and very steep and is described as being "like a ladder," the steps having no backing. The opening at the top of this stairway was closed by two flat doors. These doors, however, were required to be kept open when passengers were aboard by a United States statute, read in evidence.

Plaintiff testified that he was on the boiler deck, at the top of the stairway, when he paid his fare for the return trip to St. Louis; that he paid his fare to a collector, who came down from the hurricane deck and who told him at the time he took the fare, to go up to the roof; that he then went to the roof, saw other passengers there, walked around for a few minutes and then went over to the side which fell in; that no one ordered him to go below nor did he hear such an order given by any one.

A number of witnesses for the plaintiff testified that they were on the hurricane deck, paid their fare there and remained there until the deck fell in; and that they heard no one give an order to those on the hurricane deck to go below. Among the passengers on the hurricane deck, the evidence shows, were a number of women and children. Some of these women testified that they were not asked to go below; that they paid their fare on the hurricane deck and heard no order given by anyone for the passengers to go below.

On the part of the defendant, the evidence is that the pilot of the boat, while it was tied up at the East St. Louis wharf, persuaded all but thirty or thirty-five of the people then on the hurricane deck to go below;

that those who remained refused to go; that when he had persuaded as many as he could to go below, he closed the doors over the stairway and then he and a bystander stood on them for a few minutes to hold them down to keep passengers from coming up; that a moment before the boat pulled out he placed a whiskey barrel two-thirds full of water on the doors over the stairway and then went into the pilot house where his duties called him. Witness further testified that as soon as the boat started on the return trip, parties from below pushed against the doors at the head of the stairway, overturned the barrel of water, broke the doors from their hinges and then rushed upon the roof; that about that time the captain of the boat came up and repeatedly ordered the people to go below saying that the hurricane deck was "no place for passengers," but that only a few paid any heed to the order.

The captain testified that he gave the order and repeated it two or three times in a tone of voice loud enough to be heard by all on the hurricane deck. His evidence and that of the pilot is corroborated by a number of passengers who were on the hurricane deck. Defendant's evidence also is that no fares were collected on board the boat at all and that no one but the captain and pilot had authority over the passengers or authority to direct them where to sit or stand on the boat.

1. Defendant offered a demurrer to the evidence which the court refused. This ruling is assigned as error. The evidence for defendant shows that the hurricane deck was not constructed or fixed up for the purpose of receiving passengers thereon, and it is neither alleged nor shown by the evidence that passengers were habitually carried on the hurricane deck, with the knowledge and consent of the officers of the boat. But the plaintiff's evidence is that he was told by defendant's collector (a man apparently clothed with authority) to go upon the roof, and that he went there in obedience to the order and, when he reached there, found

a great many other passengers on the roof. It is also shown by his evidence that no officer of the boat ordered or warned him to go below, and if such an order was given, generally, to passengers on the hurricane deck, he did not hear it. On this evidence it cannot be held that plaintiff was wrongfully upon the hurricane deck, notwithstanding the fact it was not constructed or designed for the accommodation of passengers. As to the plaintiff, under the facts as shown by his evidence, the hurricane deck was the place specially set apart by defendant for his accommodation, and hence he was in a place where he had a right to be. In these circumstances, the breaking of the roof, resulting in injury to plaintiff, is, as to him, prima facie evidence of negligence on the part of the defendant. [Scott v. London & St. Catherine Docks Co., 3 Hurl. & C. 596, 601; Hill v. Scott, 38 Mo. App. l. c. 374; Seiter v. Bischoff, 63 Mo. App. l. c. 160; Ward v. Steffen, 88 Mo. App. l. c. 576; Ranet v. Lachance, 96 Mo. App. l. c. 484; Turner v. Harr, 114 Mo. 335. See also notes to Barnowski v. Helson, 15 L. R. A. 33.]

2. The court gave the following instructions for the plaintiff:

"1. The jury are instructed that it was the defendant's duty to build that part of its boat designed and used for the carrying of passengers sufficiently strong to carry its passengers without breaking, or giving away, under the weight of passengers carried.

If, therefore, you find from the evidence that plaintiff was a passenger on defendant's boat at time of the accident and that while a passenger on said boat a deck or roof thereof, which was used for carrying passengers, suddenly gave way and precipitated plaintiff down to a lower deck, causing the injuries complained of, the falling of said deck or roof, if you find from the evidence that it fell because of the weight of passengers thereon, is conclusive evidence that it was not built with that degree of care or strength which it was defendant's duty

to exercise, and in that event your verdict should be for the plaintiff, unless you believe from the evidence that the plaintiff himself was guilty of negligence contributing to the injuries complained of in going upon or remaining upon said deck or roof.

"2. The jury are instructed that if they find from the evidence that plaintiff was a passenger, lawfully on board defendant's boat at the time of the accident mentioned in evidence, and received injuries therefrom, and that said accident consisted in the falling down and giving way of one of the decks of defendant's boat, and that plaintiff's injuries arose from the said falling down and giving way of the deck of defendant's said boat, then the burden of proof is shifted upon defendant to show to the satisfaction of the jury that the said falling down of said deck was through no fault, negligence or carelessness of defendant; and unless so shown, the jury should find for the plaintiff, unless you further find that plaintiff was guilty of negligence in going upon or remaining upon the hurricane deck, which negligence contributed to the injuries complained of.

"3. The jury are instructed that even though you find from the evidence that some of the passengers were warned not to go upon the top, or hurricane deck, plaintiff cannot be charged with negligence in going upon said deck unless he heard or was aware of said warnings, or unless the condition of said top deck, at the time plaintiff went thereon, was such as to be apparent to a reasonably careful observer was unsafe, or was not meant for the use of passengers. And in considering whether plaintiff should have known that said top deck was unsafe, or not meant for passengers, you may consider all the physical facts regarding the approach to said deck."

Instruction No. 1 is erroneous in that it makes defendant an absolute insurer of the strength and safety of its boat. A common carrier of passengers is, to use the oft-repeated ruling of the appellate courts of this

State, required "so far as it is capable by human care and foresight, to carry them safely and it is responsible for all injuries resulting to its passengers from even the slightest negligence on its part." [Clark v. Railroad, 127 Mo. 1. c. 208; Hite v. Railroad, 130 Mo. 1. c. 139; Combs v. Sullivan County, 105 Mo. 1. c. 233; O'Connell v. Railroad, 106 Mo. 482; Sullivan v. Railroad, 133 Mo. 1; Olsen v. Railroad, 152 Mo. I. c. 432; Mathew v. Railroad, 78 S. W. (Mo.) 271. But a common carrier is not an insurer of passenger. Leslie v. Railroad, 88 Mo. 50; O'Connell v. Railroad, supra; Willmott v. Railroad, 106 Mo. 535.] The same rules of law apply in respect to the equipment a carrier provides for the carriage of passengers as to its management of that equipment when carrying them. [Furnish v. Railroad, 102 Mo. 438; Cobb v. Railroad, 149 Mo. 135.] The instruction is also erroneous for the reason it told the jury that the falling of the roof was conclusive evidence that it was not built with that degree of care and strength which it was defendant's duty to exercise. The rule of evidence in such circumstances, announced by Lord Erle in Scott v. London & St. Catherine Docks Co., supra, is as follows: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." From the fact that the roof of the boat fell, the law presumes negligence (if the plaintiff was rightfully upon it) but this presumption is not a conclusive one. It may be overthrown or explained away by evidence showing that the defendant exercised proper care. The instruction deprived defendant of the right of such explanation and cut up by the roots all of its evidence tending to exculpate it from blame. The instruction is also in conflict with instruc-

tion No. 2, given for plaintiff.    In instruction No. 2, the jury were properly instructed that the falling of the hurricane deck was prima facie evidence of defendant's negligence and shifted the burden of proof on defendant to show that it had exercised proper care.

3.    Instruction No. 3, given for plaintiff, conflicts with No. 4a, given for defendant.    Instruction No. 4a instructed, in effect, that if the captain of the boat gave orders to the passengers on the hurricane deck to go below, in a sufficiently loud tone of voice to be heard by the plaintiff, and in time for him to have left said deck before it fell, plaintiff could not recover.    We think plaintiff's third instruction correctly stated the law and that No. 4a, given for defendant, is erroneous.    It puts the plaintiff in the wrong by remaining on the hurricane deck after the captain gave verbal orders to go below, although the plaintiff did not hear the order and had no information that it had been given.    Plaintiff cannot be thus convicted of constructive negligence.

For the reasons herein stated, the judgment is reversed and the cause remanded.    All concur.