The judgment is reversed and the cause remanded. All concur.

---

EVERS, by Next Friend EVERS, Respondent, v. WIGGINS FERRY COMPANY, Appellant.

St. Louis Court of Appeals, October 22, 1907.

1. **CARRIERS OF PASSENGERS: Injuries to Passenger: Prima-Facie Case.** This case was before the court on a former appeal (see Evers v. Wiggins Ferry Company, 116 Mo. App. 130), where on substantially the same evidence as offered by the plaintiff in the last trial, it was held the plaintiff made out a prima-facie case.

2. **PRACTICE: Evidence: Harmless Error.** The exclusion of competent evidence to prove certain facts is not reversible error

where the same facts are proven by other competent evidence and the party offering the evidence was not prejudiced by its exclusion.

3. ——: ——: Rebuttal. The admitting of evidence in rebuttal which ought to have been offered in chief is largely within the discretion of the trial court and does not furnish ground for reversal unless such discretion has been abused and has worked prejudice to the opposing party.

4. ——: Instructions: Construed as a Whole. An instruction should not be segregated into parts and meaning given to the segregated part which it would not have if read in connection with all the other parts; one instruction cannot be expected to cover the entire case, but the instructions for plaintiff and defendant should present the entire case and they should be read as a whole to get the declared law of the case.

5. ——: ——: Carriers of Passengers. In an action against a steamboat company for injuries to a passenger caused by the giving way of the deck upon which the passenger was riding, the instructions are set out at length and held to properly declare the law and to be no broader than the allegations of the petition in their specifications of negligence.

5. PERSONAL INJURIES: Excessive Verdict. On the first trial plaintiff was awarded, $2,750, on a second trial he was awarded $5,200 of which he immediately remitted $700. The evidence shows that plaintiff had a permanent injury to his leg, that he was in the hospital about nine weeks, that he was treated for his leg for two years up to the time of the trial, that it appeared as if it would have a permanent open sore where the injury occurred, that it would be always weak and never normal. *Held,* the verdict was not excessive.

Appeal from St. Louis City Circuit Court. — *Hon. Robert M. Foster,* Judge.

AFFIRMED.

*J. E. McKeighan* and *William R. Gentry* for appellant.

(1) It declared that a prima-facie case was made in favor of the plaintiff and the burden of proof was shifted upon the defendant, if any deck on defendant's boat broke down, regardless of whether the deck was intended or used for carrying passengers or not, and

regardless of whether the crowd of passengers were there rightfully or wrongfully. (2) It was broader than the petition, for it authorized recovery in favor of plaintiff, and declared a prima-facie case made out by plaintiff if the deck broke from any cause whatever, instead of limiting the breaking of the deck to one of the causes alleged in the petition. Chitty v. Railroad, 148 Mo. 64; Waldheier v. Railroad, 71 Mo. 514; Fuchs v. St. Louis, 167 Mo. 620; McManamee v. Railroad, 135 Mo. 440; McCarty v. Hotel Co., 144 Mo. 397. (3) This instruction was wrong because it deprived the defendant of the benefit of one of its defenses. May v. Crawford, 150 Mo. 504; Link v. Westerman, 80 Mo. App. 592; Hohstadt v. Davis, 50 Mo. App. 240; Evans v. Railroad, 16 Mo. App. 522.

*Lee Meriwether* for respondent.

BLAND, P. J.—This is the second appeal of this case. On the first appeal the judgment was reversed and the cause remanded for error in instructions given in plaintiff's behalf. [See Evers v. The Wiggins Ferry Co., 116 Mo. App. 130.] The evidence on the second trial, as abstracted, is not materially different from that adduced on the first one, except the medical evidence in respect to the extent and permanency of plaintiff's injuries. The facts are fully set forth in the opinion rendered on the first appeal and will be found at pages 133, 134, 135, 116 Mo. App. On the first trial the jury rendered a verdict for $2,750, and on the second the verdict was for $5,200. Pending a motion for new trial, plaintiff voluntarily filed a remittitur in the sum of $700.

1. The first assignment of error is that the court erred in overruling defendant's demurrer to plaintiff's evidence. On the former appeal we held that plaintiff made out a prima-facie case within the scope of the

allegations of his petition. We see no good or valid reason to retract our former holding.

2. Plaintiff was a boy fourteen years of age at the time he was injured. He testified that he paid his fare while on the boiler deck of the boat and was told by the person who collected his fare to go up on the hurricane deck; that he went up on the hurricane deck and was there when it fell and caused his injury. On cross-examination of the captain of the boat, the fact was developed that passengers were carried on the hurricane deck of excursion boats, by permission of the captain in command. The "Church," the boat upon which plaintiff was injured, was not an excursion boat, but only a ferryboat. On redirect examination of the captain, defendant's counsel offered to prove that the hurricane decks of excursion boats were constructed with the view of carrying passengers on them, while the hurricane deck of the ferryboat "Church" was not constructed for that purpose. This evidence was excluded by the court and the ruling is assigned as error. It was contended by defendant that plaintiff and other passengers were on the hurricane deck against the orders of the officers of the boat and remained there after they were repeatedly ordered to go below, and we think the rejected evidence was proper. But inasmuch as the construction of the hurricane deck was fully testified to by defendant's witnesses, and also that the deck was not designed to carry passengers; that all the passengers on it at the time of the accident were there without the permission of any of the officers of the boat, and also, after having been warned to go below, we cannot see that the excluded evidence prejudiced defendant's case.

3. W. B. Blackwell and Mrs. Daisy Blackwell, over the objections of defendant, were permitted to testify in rebuttal, that they paid their fare after the boat left the Illinois shore on its return trip to the Missouri shore. The officers of the boat testified that no fares were col-

lected on the return trip, and some of plaintiff's wit-
nesses and plaintiff, himself, testified in chief, that they
paid their fares on the return trip. The evidence of
the Blackwells was out of order, and it is contended
that it should have been excluded. It was irregular
practice to admit their evidence in rebuttal, but the ad-
mission of such evidence is largely within the discre-
tion of the trial court and does not furnish ground
for reversal unless such discretion has been improvident-
ly exercised and worked prejudice to the opposing party.
It is not apparent that defendant was prejudiced by the
rebuttal evidence of the Blackwells.

4.   The court gave the following instructions for
plaintiff:

"1.   The jury are instructed that if you find from
the evidence that plaintiff was a passenger, lawfully
on board defendant's boat at the time of the accident
mentioned in the evidence, and received injuries there-
from, and that said accident consisted in the falling
down and giving way of one of the decks of defendant's
boat and that plaintiff's injuries arose from the said
falling down and giving way of the deck of defendant's
said boat, then the burden of proof is shifted upon de-
fendant to show to the satisfaction of the jury that the
said falling down of said deck was through no fault,
negligence or carelessness of defendant; and unless so
shown, you should find for the plaintiff, provided you
do not further find from the evidence that plaintiff was
guilty of negligence in going upon or in remaining upon
the hurricane deck, which negligence contributed to the
injuries complained of.

"2.   The jury are instructed that even though you
find from the evidence that some of the passengers were
warned not to go upon the top, or hurricane, deck, plain-
tiff cannot be charged with negligence in going upon
said deck unless he heard or was aware of said warnings,
or unless the condition of said top deck, at the time

plaintiff went thereon, was such as to be apparent to a reasonably careful observer was unsafe, or was not meant for the use of passengers.

"And in considering whether plaintiff should have known that said top deck was unsafe, or not meant for passengers, you may consider all the physical facts regarding the approach to said deck."

With others, the court gave the following instructions for defendant:

"3. The court instructs the jury that all of the passengers on defendant's ferryboat, Alonzo C. Church, on the occasion in question were bound to obey all reasonable requests, orders and commands of both the captain and pilot of said ferryboat in reference to their carriage by the defendant on said boat;

"And if the jury believe from the evidence in this case that the roof or hurricane deck of said ferryboat was not intended for carrying passengers and was not a suitable place for the carriage of passengers on said boat, then the captain and pilot of said boat had a right to order the passengers not to go upon or remain upon said roof or hurricane deck, and it was the duty of all passengers in whose hearing such orders and warnings were given, if any, to obey such orders and warnings;

"And if the jury further find from the evidence that before the fall of the portion of the hurricane deck or roof of such ferryboat, a large number of passengers were warned or ordered by the captain or pilot not to go upon the same, and that after a large number of passengers had gone upon said roof or hurricane deck, the captain and pilot, or either of them, ordered, warned or requested the passengers to leave said hurricane deck, or roof and go down below, and that such warnings, or orders, or requests, were heard by a large number of passengers in time for them to have left said hurricane deck and to have avoided the breaking down of said roof or hur-

ricane deck, if they had obeyed said orders, but that they did not do so, and that the fall of said hurricane deck or roof was caused solely by the failure of the passengers thereon who heard and understood such warnings, requests or orders, by the captain or pilot, to obey the same, then the defendant is not liable on account of the fall of said hurricane deck or for the injury alleged to have been caused to plaintiff thereby and the verdict of the jury must be rendered in favor of defendant, unless you further believe and find from the evidence that one of the agents of the defendant on said boat, acting in the line of his authority as such agent, directed the plaintiff to go upon said hurricane deck or roof and that after he did go upon the same he did not hear any of the warnings, requests or orders given by the captain or pilot, if any were so given, ordering, warning or requesting the passengers to leave said hurricane deck or roof in time for the plaintiff to have left the same in obedience to such orders, warnings or requests before the fall of said roof.

"4. The court instructs the jury that if you believe and find from the evidence that the hurricane deck or roof was not designed for and not being used by the defendant for the carriage of passengers and that the defendant through its captain and pilot repeatedly warned passengers not to go upon said hurricane deck or roof and tried to prevent them from doing so, and that after a large number of passengers had gone upon said roof, the defendant, through its pilot and captain ordered and requested them to leave said roof, then the burden is upon the plaintiff to show by a preponderance of the evidence as a material element to his recovery, that defendant's collector directed him, when he paid his fare to go from the boiler deck to the hurricane deck or roof, and that in giving such order to the plaintiff (if he did so give plaintiff such order) said collector was acting in the line of his authority;

and if under these circumstances you find that the evidence as to whether or not such order was given by defendant's collector to plaintiff, is equally balanced and does not preponderate in favor of either party, then you must find in favor of the defendant as to that proposition."

Defendant contends that instruction numbered 1 is erroneous in the following particulars: First, in that it informed the jury the burden of proof was shifted upon defendant, if they found the accident was caused by the falling down of one of the decks of the boat. The instruction should not be segregated into parts and a meaning given to a segregated part, which it would not have if read and construed in connection with all the other parts; nor is it expected that one instruction shall cover the entire case, but that plaintiff's instructions shall present his side of the case and defendant's its side, and that the instructions as a whole shall present the entire case to the jury, and they should be read as a whole to get the declared law of the case. If this is done, plaintiff's instruction when read as a whole, in connection with defendant's (copied herein), there is no shifting of the burden on plaintiff to show that he was in the exercise of ordinary care when injured, and that his injury is attributable to defendant's negligence. Second, it is contended the instruction is broader than the allegations of the petition. The fourth and fifth specifications of negligence in the petition are as follows:

"4. In not building the decks strong enough to hold the passengers carried thereon, on the trip in which plaintiff received the injuries complained of, and in permitting the said decks to be built of material not strong enough safely to carry the number of passengers taken on board on the trip in which plaintiff received the injuries complained of.

"5. In permitting the material of which the decks

of said boats were built, and the material upon which said decks were supported, to become rotten and too weak to support the passengers carried thereon, on the trip in which plaintiff received the injuries complained of."

The instruction is clearly within the scope of these specifications of negligence. It is also contended that the instruction ignores the defense pleaded in the answer, that is, the defense of contributory negligence. The instruction is not open to this criticism. It qualifies the right of plaintiff to recover by requiring the jury to find he was not negligent in going upon and remaining upon the hurricane deck.

5. Defendant contends that plaintiff's second instruction is misleading. We think defendant's learned counsel puts an erroneous construction on this instruction. It did not tell the jury, as contended by defendant, that after going upon the deck, plaintiff might shut his eyes as to its apparent physical condition; to the contrary, it told the jury, in effect, that plaintiff might be convicted of contributory negligence if the physical condition of the deck was such as to appear unsafe to a reasonably careful observer.

6. The fact that the verdict on the last trial was for $2,450 more than the jury awarded plaintiff on the first one, and the further fact that plaintiff voluntarily filed a remittitur of $700, are made the basis of the contention by defendant that the verdict is "grossly excessive." The difference in the medical evidence given at the first and on the second trial will explain why the last verdict is considerably in excess of the first one. On the first trial the physicians testified that in their opinion the injury to plaintiff's leg was not permanent; on the second trial, two years later, Dr. Raines testified in substance as follows: "Plaintiff was brought to the St. Louis Ticket Association Hospital and witness treated him for a compound fracture of the tibia.

The bone had protruded through the flesh. It was necessary to open up the sinus that formed from time to time in the leg. It was painful. The leg was opened about three different times. Plaintiff was at the hospital about nine weeks, and has been treated off and on up to the present time. Witness saw plaintiff's leg recently. It now looks as if plaintiff was going to have an open sore on account of the extensive scar tissue. Scar tissue is the scar that has formed over the bone as a result of the fracture—the flesh will never form over that bone at that place. The limb will soon tire from use. It is not normal but is weak. A man with such a leg could not do work as a carpenter required to climb ladders or things of that sort. He could not do laborer's work. The condition is permanent. Witness is led to believe that there will be an open sore there on account of a lack of blood supply. It is more or less sensitive to cold. Witness removed fragments of the bone. It was a comminuted as well as a compound fracture." On this character of evidence we do not think the verdict excessive, but even if it should be conceded to be somewhat excessive, the remittitur certainly brought the damages plaintiff has sustained on account of the injury within very reasonable bounds. No reversible error appearing, the judgment is affirmed. All concur.