OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1895.

---

*(Continued from Volume 132.)*

---

SULLIVAN, *Appellant*, v. THE JEFFERSON AVENUE
RAILWAY COMPANY.

Division Two, March 3, 1896.

1. **Evidence:** IMPEACHMENT OF WITNESS: AFFIDAVIT. A witness
may be impeached by an affidavit, previously made by her, containing statements conflicting with her evidence given on the stand.

2. ———: ———: ———. A witness sought to be impeached by an
affidavit previously made may explain any alteration claimed by her
to have been made in it.

3. ———: ———. Where it is sought to impeach a witness by proof
of contradictory statements, nothing less than the unequivocal admission by the witness that he made the very statement attributed to
him will deprive the impeaching party of the right of proving the
statement. (*Peck v. Ritchey, 66 Mo. 114.*)

4. **Street Car Railroads:** PASSENGERS: CARE REQUIRED. While street car companies in carrying passengers are not insurers, still they are bound to exercise the highest degree of practicable care and diligence which prudent men would observe in a like business and under similar circumstances.

5. ——: ——: CASE ADJUDGED. Plaintiff was a passenger on one of defendant's summer street cars; the driver also acted as conductor. A fellow passenger carelessly threw a lighted match on plaintiff's dress made of light, gauzy material, and it blazed up suddenly. The driver, as shown by the evidence, immediately stopped the car, but before he was able to render plaintiff any assistance she had left the car from the rear door and was severely burned before the flames were extinguished. *Held,* that defendant was not chargeable with negligence.

6. **Appellate Practice:** ERRONEOUS INSTRUCTIONS: HARMLESS ERROR. Where the judgment is for the right party it will be affirmed notwithstanding errors in the instructions.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*F. & Ed. L. Gottschalk* for appellant.

(1) A trial court should not give instructions on a matter of negligence, when there is no evidence to support them. *Evans v. Railroad,* 106 Mo. 594; *Goltz v. Griswold,* 113 Mo. 152. In both these cases there was a plea of contributing negligence; not so in the case at bar. *Graham v. Gross,* 50 Mo. App. 380. (2) A party will not be allowed, under the semblance of impeaching a witness, to get hearsay evidence before the jury. *Goltz v. Griswold,* 113 Mo. 144. (3) A common carrier of passengers must protect the passengers, etc. *Eads v. Street R'y Co.,* 43 Mo. App. 536; *Farber v. Railroad,* 116 Mo. 81. (4) The duty of a common carrier toward its passengers is not set forth in instruction number 5, according to law; the law requires a higher degree of care than that set forth. *Smith v.*

*Railroad*, 108 Mo. 243; *Furnish v. Railroad*, 102 Mo. 438; *O'Connell v. Railroad*, 106 Mo. 482; *Wilmott v. Railroad*, 106 Mo. 535; *Jackson v. Railroad*, 118 Mo. 199; *Spohn v. Railroad*, 101 Mo. 417; *Sira·v. Railroad*, 115 Mo. 127.

*Edward S. Robert* for respondent.

(1) If a witness says he does not remember making a statement contrary to his testimony, it may be shown that he did. Nothing but a direct admission will deprive the party of the right to contradict him. *Peck v. Ritchey*, 66 Mo. 114. (2) Where a witness admits that he made and signed an affidavit, it may be read in evidence without examining him in regard to it. *Spoonemore v. Cables*, 66 Mo. 579. (3) When a witness admits having written a letter it may be read in evidence without examining him as to its contents. *State v. Stein*, 79 Mo. 330. (4) The grounds of the objection must be specifically given at the time the objection is made or the supreme court will ignore it. *Railroad v. Moore*, 37 Mo. 338; *Prime v. Raboteau*, 56 Mo. 407; *State v. Smith*, 114 Mo. 406; *State v. Moore*, 117 Mo. 395; *Weston v. Flannagan*, 120 Mo. 61. (5) On appeal the objector to the evidence is held within the limits of the objection as made and specified below. *Bank v. Harris*, 54 Mo. App. 156. (6) A common carrier is not an insurer of the passengers' safety. *Jackson v. Railroad*, 118 Mo. 199. (7) If the judgment is for the right party, the supreme court will not reverse the cause for errors in the instruction or in the admission of testimony. *Finley v. Co.*, 99 Mo. 562; *Walsh v. Ass'n*, 101 Mo. 544; *Huse,* etc., *Co. v. Henze*, 102 Mo. 245; *Fortune v. Fife*, 105 Mo. 433; *Bushey v. Glenn*, 107 Mo. 331; *Wolff v. Campbell*, 110 Mo. 120; *Norton v. Paxton*, 110 Mo. 456; *Williams v. Mitchell*, 112 Mo. 300.

GANTT, P. J.—The defendant is a street car company, operating its cars on Jefferson avenue in the city of St. Louis.   On the ninth of August, 1891, the plaintiff, a young lady, with a companion, another young lady, Miss Barrett, was a passenger on one of defendant's cars in charge of Henry Reid, the driver.   The car was what is known as a bobtail horse summer car, and the driver fills the place of both conductor and driver. The plaintiff and her friend were sitting on the back seat and the car was moving north.   As the car reached a point near the northern line of Washington avenue, which it crosses almost at right angles, Henry Voss, another passenger, sitting opposite plaintiff, lit a cigarette and attempted to throw the match out of the back door.   Plaintiff was dressed in a light, gauzy summer dress and in a moment after Voss threw the match, plaintiff's dress was discovered on fire.   She screamed, as did the other ladies, four or five in number, and ran to the front door and told the driver she was afire. He immediately stopped his car.   In the meantime the passengers had all left the car and plaintiff ran off screaming.   Mr. J. F. Robinson, living at number 700 Jefferson avenue, happened to be looking out of his window and saw plaintiff's dress burning and with great presence of mind took a quilt and ran to her rescue and smothered the flames as she ran up the steps of a hospital near by.   Her hands and arms and side were severely burned, so much so that her left hand was crippled and rendered useless.

She sues the company for the negligence of its driver, the *gravamen* of her complaint being contained in this allegation of her petition: "That said defendant's car was under the charge and control of its agent; that while this plaintiff was sitting in said car to be carried to the point of destination on Jefferson

avenue between Washington to Lucas avenue, her dress was set on fire on said car, and, the same threatening to burn her to death, she being then on fire, applied to said agent and driver in charge of and managing said car for protection and assistance, which protection and assistance said defendant was by law and by its undertaking bound and obliged to render and extend to her. But that said defendant by its said agent and driver refused to protect or assist her, but on the contrary said agent and driver rudely, wrongfully, and unlawfully pushed her away, and compelling her to jump from the car all on fire, as she then was. That the flames could easily have been extinguished at the time she applied to said driver for such protection and assistance, but by his refusal to do so and his acts in the premises, she was awfully burned, all about her body," etc.

The case was tried to a jury and a verdict returned for the defendant and judgment rendered accordingly.

To reverse the judgment plaintiff assigns two errors: *First*, in admitting in evidence an affidavit made by Miss Barrett, a witness for plaintiff, to contradict her evidence on trial; *second*, error in the instructions. Of these, in their order.

I. When this affidavit was offered, counsel waived all objections to it save that "the affidavit was taken by an agent of defendant without notice to plaintiff." *Russell v. Glasser*, 93 Mo. 353. The witness did not admit she had made the statement shown her in her affidavit. She intimated very plainly that her statement had not been written down as she gave it. Nothing less than an unequivocal admission that the witness made the very statement attributed to him or her will deprive the other party of proving the statement. *Peck v. Ritchey*, 66 Mo. 114. That a witness may be impeached

by contradictory statements made out of court will not, certainly, be controverted at this late day. It is elemental; and surely the fact that the contradictory statement is under the solemnity of an oath does not lessen its value for impeachment.

The mere fact that the sworn statement was procured by an agent of the party offering it, does not affect its competency. If it be claimed that any fraud was perpetrated in suppressing a part of the statement or that a statement is inserted which the witness insists he did not make, he is entitled to explain it, and the whole matter is left to the trier of fact, whether court or jury, to weigh the credibility of the witness; but it does not affect the admissibility of the statement. There is no merit in this assignment. *Bogie v. Nolan*, 96 Mo. 85, overruling *Priest v. Way*, 87 Mo. 16.

II. That the court erred in not instructing the jury as to the proper degree of care required of a carrier of passengers we think is true. While not insurers, street car companies are carriers of passengers, and are held to that high degree of care that is demanded of other railways in carrying passengers, that is to say, the highest degree of practicable care and diligence which prudent men would observe in a like business, and under similar circumstances. *Jackson v. Grand Ave. R'y Co.*, 118 Mo. 199; *Clark v. Railroad*, 127 Mo. 197; *Waller v. Railroad*, 83 Mo. 608; *Furnish v. Railroad*, 102 Mo. 438.

But conceding this, how could the jury have reached a different conclusion. Plaintiff's counsel admit that the starting of the fire was in no manner attributable to any negligence on part of defendant. A fellow passenger threw a lighted match into plaintiff's dress in an open summer car. Her dress was of the lightest material, and before defendant's driver knew anything of it, or by the exercise of the highest

degree of care could have anticipated such a misfortune, the unfortunate lady was enveloped in fire. What did prudence of the highest character demand? Evidently the first step was to stop the car. This Miss Barrett, plaintiff's own witness, says the driver did, *immediately*, and she is corroborated by all the other witnesses as to this. What next? Plainly to aid the unfortunate young lady by assisting in using any and all appropriate means at hand to extinguish the fire. There is not a *scintilla* of evidence that the driver had any appliance suitable for such a purpose. Nor could it be expected that the proprietor of this horse car on a summer day would have anticipated that one of its passengers would be burned in this way. The most prudent man would never have thought of such an accident, nor have furnished such a car in such weather with fire extinguishers. The car was only twelve feet long and the moment the plaintiff found she could not escape through the front door she ran out the rear door.

The evidence of the driver, who had died in the meantime, was preserved in a deposition, and he testified he burnt his hands in the effort to assist plaintiff; that he called to Voss, who dropped the match, "to pull her dress off of her."

Considering the rapidity with which her dress burned; the circumstances under which it was ignited, and the promptness of the driver in stopping the car; the escape of plaintiff from the car by the rear door before the driver could possibly reach her, after halting his team, it must be ruled that this deplorable accident was in no manner the result of any negligence or wrong on the part of defendant or its servant, but was wholly attributable to the party who carelessly threw the match into the inflammable material of which plaintiff's dress was made, and there is no evidence

showing that the driver could have averted the damages had he reached her before Mr. Robinson did.

It is due to the driver to say that the allegations that he forced her off the car and treated plaintiff brutally were not supported by the evidence nor credited by the jury and plaintiff's evidence of his swearing at her or pushing her can well be attributed to her very great excitement at the time.

The verdict of the jury was for the right party notwithstanding the errors in the instructions, and the judgment will not be reversed under such circumstances. Judgment affirmed. SHERWOOD and BURGESS, JJ., concur.

### SEPARATE OPINION.

SHERWOOD, J.—I would have thought the foregoing case correctly decided, but for the recent decision in *Fuchs v. St. Louis*, 31 S. W. Rep. 115, where it is said:. "All the facts which made the sewer dangerous might fairly have been found to be .within the knowledge of the city officials after the lapse of time following the fire. * * * Carefully managed sewers do not, according to the common experience of men, usually blow up and scatter destruction and death. Such a performance is of itself entitled to consideration, on the issue of care in respect of such property; or, as some jurists have said, 'The thing itself speaks.' Had the cover of the large opening west of the saloon been removed, so as to allow the direct escape of the gas at that point, it may be that the disaster would have been avoided. It was not removed; nor do any other steps appear to have been taken in regard to the care of the sewer by the city authorities after the flow of the oil into it on the twenty-second day of July. It is not always consistent with common prudence to

await a catastrophe before taking precautions against it. Nor is it conclusive of careful management that a particular disaster has never before occurred. * * * To what extent such foresight is demanded by the duty to use ordinary care it would be very difficult to say. We shall not attempt to generalize on that topic now." And so the action of the trial court in that case in granting a demurrer to plaintiff's evidence was reversed and the cause remanded.

Adopting the language just quoted as *peculiarly applicable* to the case at bar, wherein (like *Fuchs's* case) no such accident, it seems, had ever occurred *in a street car before*, let me apply to the case in hand the principles so succinctly and lucidly announced and luminously expounded in *Fuchs's* case.

And in making such application, I find that this case is *far stronger* in its *facts* for warranting a recovery than *that* case, for the reason that *matches*, since their invention, and when in careless hands, have frequently *set fire to dresses*, and other things, thereby causing extensive conflagrations. And it is a well known fact (a fact so well known that judicial notice may be taken of it), that *men* ride in these "open summer cars," that while thus riding it is quite a common occurrence for them to *light* and *smoke cigarettes*. And it is also a common and well known fact that *ladies in warm weather*, frequently wear *dresses* of a *light, gauzy,* and *tinder-like* material as that *worn* by *plaintiff*. So that on that ninth day of August, 1891, in that "open summer car," you have assembled in close juxtaposition all of the constituent elements and conditions necessary to cause the injury *which actually did occur*.

True, it does not appear that a lady's dress ever before took fire from the careless dropping of a match *in an "open summer car,"* but that such and similar

occurrences have taken place from that and similar causes in *other* localities is a matter of common knowledge and common observation; while, on the other hand, such an accident as that of a sewer exploding has never (according to the evidence in *Fuchs's* case) occurred before since this terrene first swung her green disk into her ceaseless orbit around the sun! So that in the case at bar you have present the conditions and the *possibility* of plaintiff's dress taking fire, coupled with the *probability* that it would do so from the fact that dresses and similar materials had done so in other instances and in other localities, where were assembled together *gauzy dresses, careless fingers, matches,* and a *motive* for the latter's *ignition.*

Besides, it is not to be overlooked that in *this* case there was due to plaintiff from the defendant company the "*highest degree of care,*" while from the defendant city, in *Fuchs's* case, there was due (if indeed any degree of care at all in respect to an *unexpected* explosion of gases), only *ordinary care.*

Nor is it to be forgotten that in the latter case the city was engaged in the performance of a public and governmental duty, promotive of the public health, in the discharge of which duty a municipality is never held liable, while the defendant company in this instance was pursuing its own private business as a common carrier, for its own private gain.

When I thus contrast the facts in *Fuchs's* case with those in the present action; when I consider the *higher* degree of care due in the latter case; when I consider also, that accidents of *ladies' dresses catching fire* are of *frequent occurrence* and of *public notoriety,* but that *explosions* from *gases* in *sewers never had occurred before* the *Fuchs incident,* and yet that in the *Fuchs* case the city was held *prima facie* liable though *no means or causes* were pointed out either in the *peti-*

*tion* or in the *opinion,* whereby the city *could* have *anticipated or prevented* the accident, I feel constrained to say, while following the lines laid down in that case, that if it was the duty of the city (required only to exercise *ordinary* care), to *anticipate and to provide against the unexpected,* and to formulate means and measures to *prevent* the *occurrence* of *something* which it *had never entered into the heart of man to conceive* of as *possible,* that then there are in this case "all the facts which made the open summer car dangerous might fairly have been found to be within the knowledge of the defendant's officials after the lapse of time following the fire," catching ladies' dresses for so many years, and in so many various ways and localities prior to the building of defendant's road, that therefore, it can not be *logically* or *lawfully* said, as is said in *this* case (if *Fuchs's* case contains either *logic* or *law*), "nor could it be expected that the proprietor of this horse car on a summer day would have *anticipated* that one of the passengers would have been burned in this way. The most prudent man would never have thought of such an accident, nor have furnished such a car with *fire extinguishers.*"

And coupling together by quotation and paraphrase the forceful thoughts of my two distinguished associates within the narrow confines of a single page, I may, using as few as possible of my own poor words, by way of comment, observe further that had such fire extinguishers or a *tank of water on top of the car with suitable hose attached extending down into the car* been provided, "so as to allow the direct escape" of *water at that point onto the burning dress, "it may be that the disaster would have been avoided!"*

But neither extinguishers, nor tank, etc., were provided, "nor do any other steps appear to have been

taken in regard to the care of the car by the defendant's authorities.''

On *"carefully managed"* horse cars, ''according to the common experience of man,'' cigarette smokers do not *usually* cast burning matches on ladies' dresses and thereby scatter flames and danger of a burning death. ''It is not always consistent with common prudence to *await* a catastrophe before taking precautions against it.''

No matter whether you have any reason to *anticipate such a catastrophe or not*, or whether, anticipating it, you could have done anything to *prevent* it. ''Nor is it conclusive of careful management that a *particular disaster has never before occurred!*''

''To what extent such foresight is demanded by the duty to use ordinary care *it would be very difficult to say*.'' It would seem so, and it would further seem that if *this court* with all the facts before it which constituted and caused the unexpected and litigated injury declares it ''very difficult to say'' ''to what extent such foresight is demanded by the duty to use ordinary care,'' that assuredly a defendant should not be required to more clearly perceive by its *"foresight"* the extent of its precautionary duty than this court with all the light of surrounding circumstances is able to perceive after looking through its *"hindsight."* But, I ''shall not attempt to generalize (or *particularize*) on that topic *now*.''

In conclusion, I am forced to say that it will require something more penetrating and powerful than a cathode ray, to discover and discern the why and the wherefore that the plaintiff in *Fuchs's* case should *win*, and the plaintiff in this case *lose*.