# ELIZABETH O'GARA v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division Two, June 11, 1907.

1. **STREET CARS: Care Due Passengers.** Street car companies as carriers of passengers are held to the highest care and skill which prudent men would use and exercise in a like business and under like circumstances.

2. ————: ————: **Prima-Facie Case.** A passenger on a street car makes out a prima-facie case by evidence showing that, without fault on his part, he was injured by the 'overturning or breaking down or derailment of the car, and the burden is then cast upon the carrier of relieving itself of responsibility by showing that the injury was the result of an accident which the utmost skill, foresight and diligence could not have prevented.

3. ————: ————: ————: **Demurrer to Evidence.** The defendant was the owner of and in complete control of the street railway track on which it propelled its electric cars; plaintiff was a passenger in one of the cars, and while sitting in her seat she was injured by the sudden derailment of the car and its collision with a telegraph post on the side of the street. *Held*, that plaintiff, by showing these things, made a prima-facie case of negligence against defendant, and the law then cast the burden on defendant of showing that the accident was not the result of a lack of the high care and vigilance which the law requires at its hand, and its demurrer to the evidence was properly overruled.

4. ————: ————: ————: **Tortious Act of Another.** Where plaintiff, a passenger on a street car, makes out a prima-facie case showing her injuries were caused by a derailment of the car, defendant may excuse itself by showing that plaintiff's injury was caused solely by the tortious act of a boy who placed a brick on the track, but to do that it must show ,that its own negligence, in not discovering the tortious act of the boy and in not stopping the car after discovering it, did not concur with that tortious act to cause the ⌄ ͜railment or injury.

5. ————: ————: ————: ————: **Discovery: Stopping Car.** Where the evidence authorizes the jury to find that a motorman saw a brick placed upon the track fifty feet in front of his car, he was guilty of negligence in not attempting to stop his car; and the burden is on defendant to show that, by the use of the appliances at hand, he could not have stopped it in that distance. And where it fails to make that showing, the case must go to the jury.

6. ———: ———: ———: ———: **Children on Track: Exonera-
tion.** The fact that there were school children playing on the
track and that the ordinance required the motorman to keep
a vigilant watch for children on or approaching the track and
to stop the car in the shortest time possible, did not exonerate
the motorman from keeping his eye on the track and seeing
a boy place a brick thereon; and an instruction which seeks
to relieve defendant if the motorman was endeavoring to obey
that ordinance, and for that reason did not see the boy, should
be refused, as being argumentative and as stating no defense.

7. **EXCESSIVE VERDICT:** $7,500. It is for the jury to decide the
amount of the plaintiff's injury, and unless their verdict is
such that the appellate court can say that it smacks of bias and
prejudice, or that it is so unreasonable, in view of all the evi-
dence, that it ought not to stand, it will not interfere. And
where a very healthy woman, 35 years old, suffered a miscar-
riage as a result of her injuries, and her health has since been
poor and she has undergone great pain and suffering, and there
is some evidence that her injuries are permanent, the court will
not declare a verdict for $7,500 excessive.

Appeal from St. Louis City Circuit Court.—*Hon. War-
wick Hough,* Judge.

AFFIRMED.

*Boyle & Priest, Edward T. Miller, F. S. Whitelaw*
and *T. E. Francis* for appellant.

(1)    The court erred in refusing appellant's in-
struction in the nature of a demurrer to plaintiff's evi-
dence, and also erred in refusing the peremptory in-
struction at the close of all the evidence. Hedrick v.
Railroad, 195 Mo. 440; O'Malley v. Railroad, 113 Mo.
319; Hite v. Railroad, 130 Mo. 132; Sullivan v. Rail-
road, 133 Mo. 1; Chandler v. Gas Co., 174 Mo. 321;
McGauley v. Railroad, 179 Mo. 583; Reno v. Railroad,
180 Mo. 469; Roenfeldt v. Railroad, 180 Mo. 554; En-
gleking v. Railroad, 187 Mo. 158; Theobald v. Railroad,
191 Mo. 396; Gillespie v. Railroad, 6 Mo. App. 554;
Kennedy v. Railroad, 43 Mo. App. 1; Zurfluh v. Rail-
road, 46 Mo. App. 636; Krone v. Railroad, 97 Mo. App.
612; Elwood v. Railroad, 90 Ill. 397; Armstrong v.

Railroad, 165 N. Y. 641; LaFond v. Railroad (Mich.), 92 N. W. 99; Frederick v. Railroad (Penn.), 27 Atl. 691; Deyo v. Railroad, 34 N. Y. 9; 1 Thompson on Negligence, 47 and 61; LeBaron v. Ferry Co., 11 Allen 312; Booth's Street Railway Law, sec. 361; Wharton on Negligence, sec. 661; Railway v. Gibson, 11 Am. and Eng. R. R. Cases, 142; Nellis, Street Surface Railroads, sec. 32; 2 Wood's Railway Law, sec. 302; Jacobski v. Railroad, 64 N. W. 601; Potts v. Railroad, 33 Fed. 610; Logan v. Railroad, 183 Mo. 582. (2) The court erred in giving plaintiff's instruction 1. It is not supported by the testimony, and casts on defendant the burden of proof on mere proof of a derailment, without regarding the testimony given by plaintiff and her witnesses in explanation of the derailment. Logan v. Railroad, 183 Mo. 582; Feary v. Railroad, 162 Mo. 75; Kniche v. Whiteman, 86 Mo. App. 568. (3) The court erred in refusing to give defendant's refused instructions 1 and 2. They present the issues tendered by defendant and the law applicable thereto. They present defendant's theory, and are bottomed on the evidence. Allen v. Railroad, 183 Mo. 411. (4) The verdict is grossly excessive. The medical testimony establishes that plaintiff is practically well, and at most, is only entitled to nominal damages. No injury, except a miscarriage, is shown, and miscarriages are common and usually are followed by no ill effects.

*A. R. Taylor* for respondent.

A carrier of passengers, whilst not an insurer of the safe carriage of the passenger, is liable for the slightest neglect of the carrier either in management of the carrier's vehicle by its servants or soundness of its vehicle or carriage. This seems to have been the rule laid down in the earliest period of American decisions. Stokes v. Sallonstall, 13 Peters 191; Lemon v. Chanslor, 68 Mo. 354; Gilson v. Railroad, 76 Mo.

535. And when the vehicle of the carrier breaks down, or leaves the track, sustains a collision or injures the passengers in any manner inconsistent with a sound carriage and the high care in its management, such as would be used by a very prudent carrier, then the burden is shifted to the carrier to show that the accident and injury of the passenger occurred without the slightest neglect on its part. Lemon v. Chanslor, 68 Mo. 354; Hipsley v. Railroad, 88 Mo. 353; Furnish v. Railroad, 102 Mo. 453; O'Connell v. Railroad, 106 Mo. 482; Smith v. Railroad, 108 Mo. 243; Jackson v. Railroad, 118 Mo. 224; Clark v. Railroad, 127 Mo. 208; Och v. Railroad, 130 Mo. 51; Heyde v. Railroad, 102 Mo. App. 541. What was there unavoidable about the derailment of this car and injury to this plaintiff? The motorman wouldn't say he couldn't have seen the little boy put the brick on the track fifty feet ahead of his car. He wouldn't say he couldn't have stopped his car in five or ten feet, though to have made even a show of extenuation or excuse for the derailment, defendant was bound to show this. It simply declines to furnish any excuse for the derailment. Mash saw the brick put on the track fifty feet ahead of the car. Why didn't the motorman see it? Gadden swears the day was bright and clear and the brick was visible a half a block. Why didn't the motorman see and avoid it? Is it not true and consistent with all the evidence that he did see it and instead of removing took the chance of running over it, as he told Cliff as Cliff testified. Appellant makes no show of an excuse for the injury to plaintiff, such as the law exacts of a passenger carrier.

GANTT, J.—This is an action by the plaintiff, Mrs. O'Gara, a married woman of the age of thirty-five years, to recover damages for personal injuries sustained by her while a passenger on one of defend-

ant's street cars, south-bound on Fourteenth street, at the intersection of Fourteenth and Mallinckrodt streets, in the city of St. Louis, on the 23d day of September, 1903, by the derailment of the car and the collision of that car with a telegraph pole at or near the southwest corner of Fourteenth and Mallinck- rodt streets. The action was originally brought against both the Transit Company and the United Railways Company of St. Louis, and on the trial of the case, the United Railways Company obtained a dismissal under the ruling of the circuit court, and the cause proceeded to verdict and judgment against the Transit Company alone.

The petition, in substance, alleges that the defend- ant, at all the times stated, was a corporation by the virtue of the laws of Missouri, and owned, used and operated the railway and car mentioned, for the pur- pose of carrying passengers for hire from one point to another in the city of St. Louis. That on the 23d day of September, 1903, the defendant, by its servants in charge of this south-bound car on Florissant avenue in the city of St. Louis, received the plaintiff as a pas- senger thereon, and for a valuable consideration, by the plaintiff paid to the defendant, defendant under- took and agreed with the plaintiff to carry her safely to her point of destination on defendant's line, to-wit, Eighth and Olive streets, but that defendant, unmindful of its duty in the premises, did by its servants in charge of said car so negligently and carelessly manage and control the same and by its servants in charge of maintaining its tracks and cars in repair did so negligently manage said track and cars and machinery and appliances, that said car left said track at a point near Fourteenth and Mallinckrodt streets, and became derailed and ran across the street and collided with a telegraph pole and thereby plaintiff was thrown down, striking the seats and timbers of said car, and

was greatly and permanently injured upon her body, abdomen, back and spine and chest, and sustaining permanent internal injuries, and her nervous system was permanently injured, and she being pregnant was, by said injuries, caused to suffer a miscarriage of a child about three months advanced towards birth, and plaintiff was otherwise injured and bruised upon her body and head; that by her injuries so sustained, the plaintiff has suffered and will suffer great pain of body and mind, and her health and strength has been permanently destroyed, and her capacity to labor and earn money has been permanently impaired, to her damage in the sum of fifteen thousand dollars, for which she prays judgment.

The answer of the defendant was a general denial.

The trial of the cause resulted in a verdict for the plaintiff in the sum of seven thousand, five hundred dollars.

There is practically no conflict in the testimony. The evidence without dispute showed that the defendant was operating the car and railway in question on the 23d day of September, 1903, and that plaintiff on that day was received by the defendant's servants as a passenger on one of defendant's cars south-bound, at College and Florissant avenues; that she paid her fare as such passenger; that while she was such passenger on said car, at or near the north crossing of Fourteenth and Mallinckrodt streets, the car left the track and ran south across Mallinckrodt street and collided with a telegraph pole near the southwest corner of the two streets, and that thereby plaintiff was injured. The nature and extent of plaintiff's injuries will be considered in the course of the opinion in the discussion of the contention by defendant that the damages awarded her by the jury were excessive.

As to the cause of the derailment, the plaintiff

testified that she did not know what was the cause, she did not examine the track, she heard that there was a stone on it but she did not see it herself, as there was quite a crowd standing around there. There were a number of people standing around when she recovered her consciousness, and they said a brick was the cause of the derailment. On cross-examination she stated there was a school-house right near where this accident occurred.

Warner Cliff, a police officer, testified that he was on the car at the time of the accident and made an examination to ascertain the reason for the car leaving the track, and he saw a brick there just where the trucks left the track; the broken piece of the brick was still there on the track immediately after the derailment. The testimony showed that the accident occurred before noon of the day; that it was broad daylight at the time it happened, a bright, pleasant day.

Thomas Gadden, a passenger, at the time plaintiff was hurt, testified that he saw the motorman trying to stop the car after it left the track until it got within four or five feet of the telegraph pole. He judged that the car ran about thirty feet before it struck the pole after leaving the track. · He heard the bell ringing just before the car left the track. After the accident he saw a red brick on the track, the brick was right on the rail, and at a point where the wheel left the track; part of the brick was crushed and lying on the rail. The track at the point where the car left it, was straight, there was no curve and no other railroad crossing there. Asked how far he could see an ordinary-sized brick on the track in front of the car, he answered he could see it half a block, that his eyesight was ordinarily good.

On the part of the defendant, Mr. Edward J. Mash testified that he was a passenger on the car in question, having boarded it at John and Florissant avenues;

that he was sitting in the front seat of the car and saw a small boy run from the west side of Fourteenth street to the track and lay a vitrified paving brick on the track and then run away; that there was a school right near the track and a number of children were playing on the track and on both sides of it, and the car was running at a moderate rate of speed and was only forty or fifty feet from the point on the track where the brick was laid when it was placed there. When the car struck the brick and left the track the motorman immediately wrapped his brake and tried to stop the car, which was going down grade. The brick was eight inches long, two inches thick and four inches wide and hard as iron.

Malcomn R. Rosson, the motorman in charge of the car, stated that the car was running about five miles an hour. He did not see the brick placed on the track, but saw it on the track in a crushed condition after the derailment. The car and the track and the car machinery were in good condition. He testified that there was a school near the place of the accident and a number of children were playing around the track on both sides. He was ringing his gong and looking out for the children and did not see the boy run out and place the brick, which derailed the car, on the track. He was on the platform of the car trying to stop it when the car struck the telegraph pole. He wrapped the brake and reversed his car, but the trolley came off when the car left the track and so the reverse was of no effect.

Kromer, the conductor, saw the crushed brick on the track after the accident and saw the children prior thereto playing around the track and heard the motorman ring the gong.

John Wallace, defendant's track foreman, testified that the track was in good condition at the time of the accident, and no car had been derailed there since.

Jacob Gell, a car inspector and repairer for the defendant, examined the car before and after the accident and found it in good condition in all respects except that after the accident the dash board was damaged by coming in contact with the telegraph pole.

Officer Cliff recalled on part of the plaintiff testified that he heard the motorman say he saw the boy put the brick on the track.

I.   Did the circuit court err in refusing to sustain the defendant's demurrer to the plaintiff's evidence, either at the close of the plaintiff's case or at the close of all of the evidence?  This question must be answered in the light of the law governing defendant's liability as a carrier of passengers.  It is the settled law of this State that street car companies as carriers of passengers are held to the same degree of care and vigilance in preventing injuries to their passengers as is required of other railroads carrying passengers for hire, that is to say, the highest care and skill which prudent men would use and exercise in a like business and under like circumstances.  [Jackson v. Railroad, 118 Mo. 199; O'Connell v. Railroad, 106 Mo. 482; Redmon v. Railroad, 185 Mo. l. c. 9; Allen v. Railroad, 183 Mo. 411, l. c. 433.]

In Hipsley v. Railroad, 88 Mo. l. c. 352, it was said: "In the case of Lemon v. Chanslor, 68 Mo. 341, we had occasion to consider the rights of a passenger and the duty under the law which that relation cast upon the common carrier, and it was there held that when the evidence shows that a passenger, without fault of his own, receives injury by the overturning or breaking down of the vehicle in which he is being carried, a prima-facie case is made out for him, and the *onus* is cast upon the carrier of relieving himself of the responsibility by showing that the injury was the result of an accident which the utmost skill, foresight and diligence could not have prevented.  This

rule was applied in a case where horse-power and a hack were used by the carrier for carrying passengers, and it applies with equal if not greater force when the more powerful instrumentality of steam is used as the motive power. While carriers are not insurers of the absolute safety of passengers, and are not responsible for inevitable and unavoidable accidents, regard for the safety of human limb and life has led to the adoption of the rule announced. It follows from this ruling that plaintiff, having offered evidence tending to prove that he was a passenger on the defendant's train, and that he was injured without any fault on his part, by the derailing of the train, made out a prima-facie case entitling him to a verdict, unless it was rebutted and overthrown by the evidence of defendant showing that the accident was not the result of that want of care and vigilance which the law made it obligatory on defendant to bestow.''

In Redmon v. Railroad, 185 Mo. l. c. 9, the doctrine just cited was followed and approved. In Carpue v. Railroad, 5 Ad. & El. (N. S.) 747, where the injury was caused by a train running off the track and overturning the carriage in which the plaintiff was a passenger, DENMAN, C. J., told the jury that: ''It having been shown that the exclusive management, both of the machinery and the railway, was in the hands of the defendants, it was presumable that the accident arose from their want of care, unless they gave some explanation of the cause.''

In the case at bar, the defendant was the owner of and in the exclusive control of the track on which it propelled its cars; plaintiff was a passenger in one of its cars and while sitting in her seat she was injured by the sudden derailment of the car and its collision with a telegraph post on the side of the street. In short, under the plaintiff's case, it appeared that the injury arose from apparatus wholly and entirely

under the control of the defendant and furnished and
operated by it, and such being the case, we think the
court committed no error in overruling the demurrer
to the plaintiff's evidence, because the plaintiff had
made out a prima-facie case of negligence against the
defendant and the burden was cast upon the defend-
ant of showing that the accident was not the result
of that want of care and vigilance which the law makes
it obligatory on defendant to bestow. [Hipsley v. Rail-
road, supra; Redmon v. Railroad, supra.]

Defendant concedes that its duty is properly de-
clared in the foregoing cases, but it insists that upon
all the evidence plaintiff ought not to recover because
the plaintiff's injuries were the result of the tortious
act of a stranger over whom it had no control, to-wit,
the school boy who placed the brick on the track.

The plaintiff having made a prima-facie case, the
burden devolved upon the defendant of showing that
the derailment of its car was caused by the tortious
act of the boy, and if it could establish that plaintiff's
injury was caused solely by the act of the boy or
some third person placing the brick upon the track then
it must have shown the good legal excuse for the ex-
emption from liability. The law makes each man liable
for the consequences of his own negligent and wrong-
ful act, but it does not attempt to hold him for the
misconduct of another over whose acts he has no con-
trol, unless his negligence concurs with that other in
causing damage. [Wright v. Railroad, L. R. 8 Ex.
137; Bailey v. Railroad, 152 Mo. 449.] It is in view
of this principle that the defendant insists that the
court should have given a peremptory instruction upon
the whole evidence in the case. The learned counsel
for the defendant says: "What caused the derailment,
there can be but one answer, the brick placed on the
track by a boy. The question then arises, can the ap-
pellant, under these established facts, be liable to the

plaintiff for injuries sustained in an accident so
caused? And the answer must depend on how another
question is answered, namely, did the motorman see
or by the exercise of ordinary care could he have seen
the brick on the track in time to avert the accident?''
Counsel then proceeds to argue that the motorman
testifies he did not see the boy place the brick on the
track, but concedes that the witness for the plaintiff
in rebuttal testified that the motorman said he saw
the boy put the brick on the track, but counsel argues
that whether the motorman saw or did not see the
brick placed on the track, still there is no testimony
to show that after the brick was placed on the track
he could have stopped the car in time to avoid the
accident. If we are to assume the absolute truthful-
ness of the witness for the defendant, Mr. Mash, the
car was forty or fifty feet from the boy when he placed
the brick on the track. It was a bright, clear day and
the evidence on behalf of the plaintiff tended to show
that the brick could be seen for a half block. The
track was straight at this place with no curve, and
the witness Mash was sitting in the car and certainly
did not have as good or at least was not in a better
position to see the brick placed on the track than the
motorman who was standing on the front platform
of the car. The motorman testifies that his car was
moving at five and one-half miles an hour at the out-
side. He testified that he saw some children playing
around there, and there was one boy on the left-hand
side of the track and another came out on the right-
hand side, and there were some little children, little
girls, just the other side of them on the east side of
the track playing, and he started to wind the brake to
keep from running on them and did not think about
what the boy was doing or whether he intended to
do anything or not. On cross-examination, he said:
''I saw a boy when I was about fifty feet of him, about

to go out there. I did not see him put the brick on the track. I saw him running out there on the track. I saw him out there and I rang my gong and he wheeled and ran away." Asked if he could have seen the brick if he had looked, he answered, "Well, I did not see it." On redirect examination he stated "that the boy was about fifty feet from me when I saw him run out to the track and then run back. At the time he stopped and put it on, I suppose I was thirty feet from him, from the time he started away." Asked if he could not have stopped the car moving five miles an hour or five and a half miles an hour, on a good track with the light load that he had, within five feet, he answered he could not say, but that he could not have stopped it *on a dead still* in the length of the car. On the other hand, the officer stated that Rosson, the motorman, stated to him and Mr. Gadden, that he saw the boy put the brick on the track, but that he thought that he would run over it. Unquestionably it is the law as declared by the court that it was the duty of the defendant to maintain its track in safe condition, and while it was not to blame in the first instance for the tortious act of the little boy in placing the brick on the track, it was its duty, if by the exercise of ordinary care its servants could have seen the brick upon the track in time to have avoided running over it and thereby derailing its car, to have done so, and this issue was submitted to the jury in the instruction given on behalf of the defendant. If it was impossible, with the means and appliances then at his command, for the motorman to have stopped the car in time to avoid the derailment, then the defendant was not liable. But the rule already stated which would exonerate the defendant on account of the little boy placing the brick upon the track only clothes the defendant with immunity when its own negligent act does not concur with the tortious act of the stranger in producing

the damage. Keeping in mind always the obligation which the law places upon a common carrier of passengers to exercise that high degree of care in maintaining its tracks that a very prudent man would in like circumstances, it is obvious that it was the duty of the defendant not only to have a well-constructed track in the first instance, but to use a high degree of care in keeping it free of obstacles which might cause a derailment of its cars. This was pithly put by Baron BRAMWELL, in Wright v. Midland Ry. Co., L. R. 8 Ex. 1. c. 143, wherein he says: "Then Mr. Forbes puts this case. He says, supposing a carriage had been left by the North Western Company on the railway; that would be a nonfeasance, and there would be no liability upon the part of the defendant, because they did not put it there, and no liability upon the part of the North Western Company because they had no privity. I dissent from both propositions. If it had been left by the North Western Company upon the line it would have been the duty of the defendants to have got it out of the way, and if they had not done so they would not have had the line in the condition in which it ought to have been. The case would then have been the same as Railroad v. Blake, 7 H. & N. 987, because the undertaking is that the line should be in fit condition for the passage of the plaintiff." And so we say here, that while the defendant cannot be held for the tortious act of the little boy in placing the brick upon its track, if its motorman could not have discovered it by that high degree of diligence and care which every careful railroad employee would have exercised in the same or similar circumstances, still if by the exercise of such care its motorman could have discovered the brick upon the track in time to have averted a derailment of the car, then the law holds the defendant liable for the failure of its servants to exercise such care.

204 Sup—47

Does the defendant's own testimony on this point exonerate it? If as the jury were authorized to find from the evidence, the motorman saw the brick placed upon the track fifty feet in advance of his car, obviously he was guilty of negligence in not attempting to stop his car and not avoiding a derailment by running over the brick. Counsel for defendant urge that there was no evidence that he could have stopped the car in time to have averted the accident even if he had seen the brick, but on this point the burden was on the defendant and the only proof attempted to be made on that point was that brought out by the plaintiff, and the motorman testified that he did not know within what space he could have stopped his car under the circumstances, and so there is no affirmative proof on the part of the defendant that the car could not have been stopped within fifty feet, or at least brought to such a slow rate of speed that the car would not have been derailed by striking it, and from the force with which the car was hurled from the track and against the telegraph pole and across the street, it seems evident that no effort whatever was made to check the speed of the car, and thus we have a case in which the joint tort of the little boy and the negligence of the motorman combined to produce the damage and no authority is cited, or in our opinion can be cited, which under such circumstances would exonerate the defendant for its negligent act in contributing to the injury of the plaintiff and the derailment of the car.

We are cited by the learned counsel for the defendant to a large number of cases, among others Theobald v. Railroad, 191 Mo. 395, and McGauley v. Railroad, 179 Mo. 583, but in each of those cases, it will be observed, the plaintiff was not a passenger and no such high degree of care was required on the part of the defendant in those cases as the law exacts when a passenger is injured by the derailment of a car, and

in each of those cases the evidence disclosed that the accident occurred at night when it was very dark and the motorman did not discover the wagons upon the track until it was too late for him, by the exercise of ordinary care, to have avoided striking the wagon. And the facts in each clearly distinguish them from the case at bar, in which all the evidence shows that the accident happened on a clear, bright day, on a perfectly straight track, and when the circumstances of the children being about the track of themselves call for the exercise of care and diligence at the point, and when the evidence shows that a passenger in the car saw the boy place the brick upon the track fifty feet in advance of the car, and the motorman standing on the front platform had the same or better opportunity to observe the tortious act. Neither are the cases of Sullivan v. Railroad, 133 Mo. 1, and Woas v. Railroad, 198 Mo. 664, in both of which the company was entirely guiltless of any negligence whatever, and the acts which caused the injuries in those cases were the sole wrongful acts of a third party, at all like the case at bar. Accordingly we think the circuit court committed no error in refusing the peremptory instruction requested by the defendant at the close of all the testimony.

II.    The defendant assails the instruction given for the plaintiff because it told the jury that if they find and believe from the evidence that while the plaintiff was a passenger upon said car, and before she reached her destination, to-wit, at or near Fourteenth and Mallinckrodt streets, said car left the track and became derailed and struck a post and that thereby plaintiff was caused to be thrown from her seat in said car and to sustain the injuries mentioned in the evidence, she was entitled to recover unless the defendant showed by a greater weight of evidence that it could not have prevented such derailment by the

exercise of the high degree of care that a very careful railroad would employ under the same or similar circumstances in maintaining its tracks in safe condition and in the management and control of said car, and if the defendant has not so shown, the verdict should be for the plaintiff. For the reasons already given we think there was no error in this instruction, but that it announces a well-settled principle of law, and the duty due from a common carrier of passengers to a passenger on its cars.

III. It is next insisted that the court erred in refusing to give instructions one and two requested by the defendant. To properly understand this assignment it should be noted that the court at the request of the defendant gave the following instructions: 3d. "If the jury find from the evidence that defendant's car was caused to leave the track by a brick and to collide with the pole, thereby causing plaintiff to be shocked and injured, and if you further find from the evidence that the boy suddenly ran from or near the sidewalk with said brick and placed the same on the track so near to defendant's car that it was impossible for defendant's motorman with the means and appliances then at his command to stop the car in time to avoid the derailment of said car then plaintiff cannot recover and your verdict will be for the defendant." 5th. "You are instructed that there is no evidence in this case that the defendant's car or its appliances were unsafe nor is there any evidence in this case that the rails of the defendant's track were defective, and the court instructs you that you cannot find in favor of the plaintiff and against defendant upon the ground that the car or its appliances were unsafe or the rails of the track were defective." The defendant also asked the following instruction: 4th. "If the jury find from the evidence that defendant's car was caused to leave the track by the brick mentioned

in the evidence, then plaintiff cannot recover in this action, unless you further find from the evidence that said motorman either saw said brick being placed on the track or saw it after it was placed thereon for a sufficient length of time to permit him with the means and appliances at his command to stop the car in time to avoid collision with it." The court declined to give it in this form, but amended it so that it read as follows: "If the jury find from the evidence that defendant's car was caused to leave the track by the brick mentioned in the evidence then plaintiff cannot recover in this action, unless you further find from the evidence that said motorman either saw or by the exercise of reasonable diligence could have seen said brick being placed on the track, or saw or by the exercise of reasonable diligence could have seen it after it was placed thereon for a sufficient length of time to permit him, with the means and appliances at his command, to stop the car in time to avoid collision with it." The instruction number one refused by the court and asked by the defendant, instructed the jury that while it was the duty of defendant's motorman to exercise that degree of care that a very careful motorman would be expected to use under the same or similar circumstances to avoid injury to plaintiff and other passengers, it was also his duty to keep a vigilant watch for persons upon or approaching defendant's track, especially children, and if they find from the evidence that immediately before the accident complained of, children were running and playing upon or near defendant's track so as to be in danger of being struck by defendant's car, and defendant's motorman seeing said children, was putting his car under control and sounding the gong in order to give the children warning of his approach, and while so engaged and employed, failed to see the brick on said track, or its being placed thereon, and that he

did not know that a brick had been placed upon the track until after the derailment of the car and that thereafter he did all that he was able with his appliances to stop the car, then plaintiff could not recover. And the second instruction was along the same line, to-wit, that it was the duty of the motorman to sound the bell or gong on his car and to keep the same under control such as would enable him to avoid injury to children, and that if he had seen the children and was in the performance of his said duties and did not expect or anticipate that an obstacle would be placed upon the track and while he was so engaged a small boy ran suddenly from the sidewalk to the track and placed the brick upon the same and the motorman did not see the brick or know of its being on the track until after the derailment of the car, and thereafter he used all the means and appliances at his command to stop the car, then plaintiff could not recover. We think the court committed no error in refusing these two instructions. The instructions given by the court for the plaintiff and the defendant fully covered all the issues in the case and the vigilant watch ordinance in no manner affected it. The instructions amounted to no more than an argument why the motorman did not see the boy place the brick upon the track, and there was nothing in his duty under that ordinance which exonerated him from his duty to keep his eye upon the track and see if there were any obstructions thereon. Besides, all these matters were in evidence, and under the instructions given by the court it was for the jury to determine whether the motorman by the exercise of reasonable diligence could have seen the brick placed on the track, or have seen it after it was placed thereon for a sufficient length of time to permit him with the means and appliances at his command to stop the car. The instructions given fully covered the case and it was not error to give others which

were calculated to excuse a non-performance of his duty to his passengers.

IV. Finally, it is insisted that the verdict of the jury is grossly excessive. As to this, the evidence for the plaintiff tended to prove that she was a married woman, thirty-five years of age. At the time of her injury she was in perfect health and strength, had never had any occasion to have a family physician. The evidence tended to prove that by the shock of the collision she was violently thrown from her seat in the car against the seats and timbers of the car, striking upon her abdomen and right chest, and was rendered unconscious for a few minutes; that she was three months advanced in pregnancy; that she went immediately home after her injury and sent for a doctor and had a miscarriage the evening after the injury; that she was confined to her bed for six weeks; that since she has been able to be up out of bed her health has been poor, and she has been unable to do anything, and has suffered great pain. Her physician, a graduated physician and surgeon who had practiced his profession eleven or twelve years, testified that she had had a miscarriage, and that he curetted the womb, and that he had continued to treat her up to the time of the trial, that her trouble requires continued treatment, and that she could never get entirely well without an operation, which would necessarily be a dangerous one. On the other hand, the defendant produced the testimony of two expert witnesses who examined the plaintiff under the order of the court, and testified that she did not have a retroverted womb. The jury heard the evidence of these physicians on both sides, as also the testimony of the plaintiff herself, and made their estimate of her damages. Under our Constitution and laws, it was the duty of the jury to determine this question and unless their verdict is such that this court can say that it smacks of bias or prejudice or that it is so

unreasonable that it ought not to stand, in view of all the evidence, we would not be justified in interfering with it and substituting our judgment for that of the triers of the fact. That the plaintiff has suffered a serious injury and been compelled to undergo much pain and suffering, we think is incontrovertible. This verdict received the approval of the judge who presided on the trial and in our opinion we would not be justified in declaring it excessive.

The judgment of the circuit court should be and is affirmed. *Fox, P. J.,* and *Burgess, J.,* concur.