Maggie Fitzjohn, Respondent, v. Ozark Mountain Distilling Company, a Corporation, Appellant, No. 41008—221 S. W. (2d) 146.

Division One, April 11, 1949.

Opinion Modified on Court's Own Motion and Motion to Transfer to Banc Overruled, June 13, 1949.

*Bond & Bond* and *Seiler, Blanchard & Van Fleet* for appellant.

*Norman, Foulke & Warlen* for respondent.

BRADLEY, C.—Action for damages for the alleged wrongful death of plaintiff's husband; verdict and judgment went for plaintiff for $9,000; defendant's motion for a new trial was overruled and this appeal followed.

Deceased was an employee in appellant's distilling plant in Jasper County, and was killed when the doubler tank exploded. Respondent's case was submitted under the res ipsa loquitur rule. Appellant, in its answer, denied that it was guilty of any negligence contributing to the death of deceased, and alleged that the death of deceased was caused and contributed to by his own negligence, and contends that the res ipsa rule cannot be invoked because of the duties of deceased and his knowledge of the doubler tank, its attachments and connections, and the risks and dangers inherent in his work.

Respondent was the only witness used on her side of the case. She testified, including the direct and cross examination, that deceased was her husband; that he was an employee of defendant; that he worked in defendant's distilling plant; that on March 4, 1945, when on duty, he was killed by an explosion in the plant; that she had lived near the plant for many years and that there had not theretofore been an explosion in the plant. She also testified that she and the deceased had four children ranging in age from 11 to 18; that deceased was earning about $4500.00 per year. There was no evidence on the part of respondent as to what exploded or anything about the equipment in the plant or what the deceased was doing when the explosion occurred. Plaintiff rested her case after testifying as above stated. Defendant thereupon filed motion for a directed verdict, but the motion was overruled. Manifestly plaintiff's evidence was not sufficient to support submission under the res ipsa loquitur rule. Charlton v. Lovelace et al., 351 Mo. 364, 173 S. W. (2d) 13. We might say, however, that the facts were covered by the opening statements of counsel which statements are in the record, and no doubt the learned trial court, in ruling the motion, took into consideration the statement by counsel for defendant. Defendant did not stand on its motion for a directed verdict at the close of plaintiff's case, but introduced evidence from which the facts pertinent to the explosion and death of deceased were disclosed. At the close of the whole case defendant again filed motion for a directed verdict which was overruled.

Appellant assigns error (1) on overruling its motion for a directed verdict at the close of the case; (2) on the refusal of its instructions 7 and 7(a); and (3) on respondent's instructions 2 and 3.

If there is anything in the evidence introduced by appellant that will aid plaintiff's case she is entitled to it, hence we state the facts

as they appear from appellant's evidence. March 4, 1945, and for some time prior thereto, deceased had been superintendent of maintenance and foreman of the maintenance crew at appellant's distilling plant. About 8 p. m. on the date mentioned, while using an acetylene torch, in connection with some work he was doing on the vapor line connected with the doubler tank, the doubler tank exploded and he was killed. The explosion occurred about 8 p. m. on Sunday; the plant had been shut down the night before and the whole of Sunday was used by deceased and his crew to make repairs. Details as to these repairs are not shown, but they included repairs on the rectifying column (the rectifier) and the vapor line; the work required that the plant be shut down and the doubler tank drained and such was done.

The doubler tank was made of $\frac{1}{4}$ inch boiler plate steel; was 14 feet in diameter and 12 feet high; was somewhat convex at the top and concave at the bottom; had pipe connections, control valves, etc. to permit the intake and outgo of liquids used in the manufacture of alcohol. There were steam coils in the bottom of the doubler tank and the liquids in the tank were heated by these coils. As the liquids vaporized the vapor passed from the doubler tank through the vapor line and into the rectifier which was 12 or 14 feet west from the doubler tank; was cylindrical in form, 42 inches in diameter and about 30 feet high. The vapor line was made of copper; was 8 inches in diameter and extended from the top of the doubler tank into the bottom of the rectifier. Deceased, at the time of the explosion, was using an acetylene torch on the vapor line; a member of his repair crew had drilled holes in the line; these holes made a small circular figure; the metal in the circle area was bashed out and the torch was being used, after the piece was out, to weld in a thermometer bulb as we understand. The torch had been used for about 10 minutes when the explosion occurred, and the work there was almost completed.

Appellant used as witnesses, Martin Doane, its president; Chester Knight, its assistant superintendent, and Martin L. Moore, its then superintendent of maintenance and who succeeded deceased in such position. Doane testified that deceased was maintenance foreman at the time of the explosion; that he (deceased) "had charge of repair and maintenance"; that a crew of men worked under him; that deceased had been working for appellant for about 2 years; but had been maintenance foreman for about 6 months before the explosion; that if the nature of repair work upon equipment would be dangerous because of gases, etc., then the equipment to be repaired was taken out of operation; that it was the duty of the man in charge of the repair work "to ascertain whether or not it was safe to work on that piece of equipment; alcoholic vapors in the doubler tank might cause it to explode. . . . Q. Well, I will ask it this way: From your knowledge of the construction of that doubler tank and

158

manner of its operation, could there have been anything else in there that caused it to explode? A. I could say there shouldn't be; I can't say there couldn't be. . . . Q. Was it or was it not the duty of Fitzjohn (deceased) as maintenance foreman at that particular time or at any other ▆▆▆ time when he held this job (maintenance foreman) after a piece of equipment had to be repaired and work to be done on it, to satisfy himself if it was safe to work on and if anything remained to be done to see that it was done for the safety of himself and his other employees of the plant? A. Yes, it was.''

Doane said that the only safe precaution to detect ·the presence of alcoholic vapor was the sense of small. He further testified that he had 12 years experience in the distilling business; that the method in common use to prepare distilling equipment for work to be done upon it and to determine whether it was safe for work upon it was steaming and washing out the equipment ''and then determining by your nose the presence of (alcoholic) odors.'' Doane said that there are mechanical devices used to detect the presence of alcoholic vapors, but that such were not in common use.

Knight, assistant superintendent, was on top of the doubler tank and near deceased when the explosion occurred and was injured. We do not deem it necessary to state the evidence of Knight and Moore. So far as concerns the duties of deceased they testified to the same effect as did Doane. Knight said that he did not detect an alcohol odor at the place where deceased was working at the time of the explosion.

There was no evidence as to the cause of the explosion, but immediately following the explosion a portion of the top of the doubler tank, a 6 to 10 foot segment, was severed from the tank side and pushed upward 6 or 8 feet. The vapor line leading from the doubler tank to the rectifier and upon which line deceased was using the torch was collapsed as if mashed in. In the brief counsel for appellant make a surmise as to the cause of the explosion. We set this out not because it has any place or weight in the case (it has neither), but merely to show counsel's guess. The surmise follows: ''It is submitted that the only reasonable hypothesis as to the causes of the explosion, under all of the testimony, is that the deceased failed to check the doubler tank for vapors by use of his sense of smell, failed to steam it out properly, or otherwise properly prepare it for work and that he kept the heat on the copper vapor line (copper being one of the best known conductors of heat) until a vacuum was created which pulled enough of the vapors in the doubler tank into the pipe on which he was working to act as a fuse for the vapors in the tank. We submit that there is no other explanation for the fact that the vapor line or pipe was in a collapsed condition after the explosion, because if the explosion had originated in the doubler tank itself, the force of the concussion

would have followed the line of least resistance into the open vapor line, and it would either not have been affected, or would have been split open. The fact that it was collapsed clearly indicates that there were enough vapors pulled into it to act as a fuse and when they became ignited, the flame followed them into the doubler tank, out of the vapor line, collapsing it, and setting off the vapors in the doubler.''

Under the record here we must take it as established that it was the duty of the deceased to do whatever was necessary to make the equipment reasonably safe for the repair work to be done upon it. And such being so, Is the res ipsa loquitur doctrine applicable? ''In general and on principle the doctrine res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such' as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence.'' McCloskey v. Koplar et al., 329 Mo. 527, 46 S. W. (2d) 557, l. c. 599, 92 ALR 641; Mueller v. St. Louis Public Service Co., 358 Mo. 247, 214 S. W. (2d) 1, l. c. 3.

Appellant concedes that the res ipsa rule is, under proper facts, applicable to a master and servant relation as is the case here, but contends that under the present facts the rule is not applicable. Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693, was a res ipsa case, and the relation between the parties was that of master and servant. In that case the plaintiff's hand and wrist were caught and injured in a sausage grinding machine which he was operating. The machine was powered by electricity; the power was turned on by pressing a black button and turned off by pressing a red button. It was necessary, at intervals, to clean the machine, and the plaintiff, in order to clean, stopped the machine; removed and cleaned the worm and other parts and was putting these parts back, after having stopped, when the machine suddenly, unexpectedly, and in an unusual manner, and without the black button being pressed, started up and caught his hand. The point was made in that case that, under the facts, the res ipsa rule was not applicable, but this contention was denied. In ruling the point the court said [40 S. W. (2d) l. c. 697]:

''There are two reasons why the doctrine of res ipsa loquitur is applicable to the facts presented in this case: (1) The courts of this and other states unite in holding that the automatic and abnormal starting of a machine when it ought to remain at rest is evidence of negligence on the part of the master, and, if the further facts appear that the installation, upkeep, *and duty to inspect and repair the machine and appliances are with the master, and not with the injured servant,* who is ignorant of and without opportunity to know the mechanism and how same is operated, and when the defect and cause

thereof are peculiarly within the knowledge of the master, then the doctrine mentioned applies'' (italics ours). Many cases from this and other jurisdictions are cited in the Gordon case, and see also Jenkins v. Kansas City, 230 Mo. App. 337, 91 S. W. (2d) 98; Charlton v. Lovelace et al., supra.

In the Charlton case the application of the res ipsa loquitur rule is considered at some length and many cases are cited. In that case it is said [173 S. W. (2d) l. c. 18]: ''In order to make a prima facie case under the res ipsa loquitur doctrine the evidence must be such as to reasonably exclude the negligence of the injured as a contributing cause of the injury, to wit, 'that he was injured without any fault on his part' '', citing O'Gara v. Transit Co., 204 Mo. 724, 733, 103 S. W. 54, 57, 12 LRA, N. S. 840, 11 Ann. Cas. 850; Hipsley v. K. C. St. J. & C. B. Ry. Co., 88 Mo. 348, 352; Lemon v. Chanslor, 68 Mo. 340, 354, 30 Am. Rep. 799; Olsen v. Citizens' R. Co., 152 Mo. 426, 432, 54 S. W. 470; Deister v. Kansas City Northwestern R. Co., 271 Mo. 63, 195 S. W. 499, 501.

We find no case and able counsel for respondent cite no case where it is held that the res ipsa loquitur rule is applicable under facts such or similar to the facts here where the injured party's knowledge of the offending equipment or instrumentality was such as here and where it was the duty of the injured party, as here, to repair and to see to it that the equipment to be repaired was put in a reasonably safe condition for repair. In all the cases, so far as our research shows, where the res ipsa loquitur rule has been applied to something happening to machinery or equipment and causing injury to the one in charge, it has been where it was the duty of the owner of the machinery or equipment to know about its condition as to safety and not where such duty rested upon the one injured. It is pointed out in the Gordon and Charlton cases that the mere fact that one is injured while in the line of duty is not sufficient to make the res ipsa loquitur rule applicable. It is also pointed out in the Charlton case that the rule cannot be invoked where the existence of negligence of the defendant is wholly a matter of conjecture which is the situation here. Charlton v. Lovelace et al., supra [173 S. W. (2d) l. c. 20]; Brown v. Klein, 230 App. Div. 681, 245 NYS 654.

The res ipsa loquitur rule is not applicable under the present facts. It will not be necessary to rule other questions. The judgment should be reversed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.